**Joe Wheeler WADE, Individually, Margaret D. Wade, Individually, and as Administratrix of the Estate of Dennis W. Wade, Plaintiffs,**

v.

**David WATSON, David Watson Enterprises, Inc., Phillip Howard, Atlanta International Raceway, Inc., and National Association for Stock Car Auto Racing, Inc., Defendants.**

Civ. A. No. C81–479A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 14, 1981.

Paul Oliver, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., H. Park Helms, Lane & Helms, Charlotte, N. C., for plaintiffs.

A. Paul Cadenhead, Paul M. Talmadge, Jr., Stephen E. O'Day, Hurt, Richardson, Garner, Todd & Cadenhead, Foy R. Devine, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This is a diversity case arising out of the death of an automobile mechanic, with all pertinent events occurring in Georgia. The suit is brought by deceased's mother, Mrs. Wade, as Administratrix of his estate, seek-

ing to recover $500,000 for his pain and suffering; and by his mother and father, individually, seeking $5 million under Georgia's Wrongful Death Act (Ga.Code § 105–1301) for the full value of his life.

Dennis W. Wade, the deceased, worked as a mechanic with a pit crew in certain racing events. The complaint alleges that defendant, Mr. Watson, was a driver entered in the Grand National Race at the Atlanta International Raceway, and Wade was a member of his pit crew. Watson entered the pit area to make a pit stop during the race at an unsafe and unreasonably high rate of speed, killing Wade. The complaint alleges gross negligence amounting to an intentional tort.

Defendants rely heavily on releases of liability executed by Wade as a condition of access to the premises and participation in the race. Wade executed two documents indicating that he released NASCAR and Atlanta International Raceway and others from liability arising out of participation in the race.

One document signed by Wade reads in part as follows:

In consideration of receiving permission to enter the premises, being permitted and privileged to participate or assist others participating in said event, as evidenced by the Permit colored, coded and numbered as shown on this form, each of the undersigned, for himself, his heirs, next of kin, personal representatives and assigns, hereby RELEASES, REMISES AND FOREVER DISCHARGES AND AGREES TO SAVE AND HOLD HARMLESS AND INDEMNIFY NASCAR AND SANCTIONING BODY AND THE PROMOTORS PRESENTING SAID EVENT, THE OWNERS, AND LESSEES OF THE PREMISES, THE PARTICIPANTS THEREIN, THE OWNERS, SPONSORS AND MANUFACTURERS OF ALL RACING EQUIPMENT USED IN SAID EVENT AND THE OFFICERS, OFFICIALS, DIRECTORS, AGENTS, EMPLOYEES AND SERVANTS OF ALL OF THEM, OF AND FROM ALL LIABILITY CLAIMS, DEMANDS, CAUSES OF ACTION AND POSSIBLE CAUSES OF ACTION WHATSOEVER, ARISING OUT OF OR RELATED TO ANY LOSS, DAMAGE OR INJURY (INCLUDING DEATH) THAT MAY BE SUSTAINED BY OUR RESPECTIVE PERSONS OR PROPERTY, THAT MAY OTHERWISE ACCRUE TO ANY OF US OR TO OUR RESPECTIVE HEIRS, NEXT OF KIN OR PERSONAL REPRESENTATIVES WHILE IN, ON, ENROUTE TO, FROM, OR OUT OF SAID PREMISES FROM ANY CAUSE WHATSOEVER INCLUDING NEGLIGENCE OF ANY OF THE FOREGOING.

\*   \*   \*   \*   \*   \*

This RELEASE shall be binding upon each of the undersigned and their respective distributees, heirs, next of kin and personal representatives.

That document was required to be signed by each pit crew member near the day of a NASCAR-sanctioned race.

Additionally, Wade executed a "Pit Permit" stating in part that: "I hereby release speedway owner, operator, promoter, NASCAR (R) and any other person or persons connected with the racemeet for which this Pit Permit has been issued from all liability for personal injury or property damage while preparing, practicing, qualifying or participating in or attending said racemeet, \* \* \* This permit issued subject to the terms and conditions of this 'Release' executed by the undersigned to whom this permit is issued."

The case now comes before the court on the motion for summary judgment of Atlanta International Raceway, Inc. and National Association for Stock Car Auto Racing, Inc. The motion rests on two grounds. First, movants argue that under the terms of the above-quoted releases, Wade would have had no cause of action even for gross negligence which was alleged in the complaint, in these circumstances; and secondly that his parents' wrongful death action must fall because Wade himself could not have maintained an action.

■ In support of point 1 of their argument, movants argue that there is no reason why this court should not enforce the provisions of the release even against a claim of gross negligence. Movants concede the general rule in Georgia, which is that one may by careful language exculpate himself even from liability for his own negligence, but not from his own gross negligence or intentional act.[1] Movants urge that public policy as it affects carriers and landlords will prohibit them from contracting out of liability for their own gross negligence. However, they urge that there is no public policy which would forbid private individuals from agreeing by contract to give up whatever rights they choose, including the right to sue for gross negligence. The cases cited by movants for this proposition, however, fail to support it in fact situations involving gross negligence, as the following discussion will show.

*Cash v. Street and Trail, Inc.*, 136 Ga. App. 462, 221 S.E.2d 640 (1975), did involve the enforcement of a private exculpatory clause; but there was no claim of gross negligence in the case. The exculpatory provision was applied only against simple negligence. Similarly, in *Doster v. C. V. Nalley, Inc.*, 95 Ga.App. 862, 866, 99 S.E.2d 432 (1957), the court considered a covenant not to sue a promoter and track operator. Plaintiff was a dragracer, who collided with a wrecker wrongfully on the track. The court enforced the covenant not to sue the promoter and the track operator, but there was no allegation of negligence as to them.

Two additional cases cited by movants, namely *Arnold v. Johnston*, 84 Ga.App. 138, 65 S.E.2d 707 (1951), and *Martin v. Monroe*, 107 Ga. 330, 33 S.E. 62 (1898), are not helpful here because both involve covenants not to sue on a note, and naturally contained no gross negligence issues.

Similarly, other cases cited by movants dealing with racing mishaps are not helpful on the issue of gross negligence. *Gore v. Tri-County Raceway, Inc.*, 407 F.Supp. 489 (M.D.Ala.1974), involved no claim of gross negligence. In *Seymour v. New Bremen Speedway, Inc.*, 287 N.E.2d 111, 31 Ohio App.2d 141 (1971), the court enforced a release prohibiting suit for negligence, and affirmed the trial court's denial of plaintiff's motion at the close of the trial to add for the first time allegations of wilful and wanton conduct. *Trumbower v. Sports Car Club of America*, 428 F.Supp. 1113 (W.D. Okla.1976), involved no claim of gross negligence. *Winterstein v. Wilcom*, 16 Md.App. 130, 293 A.2d 821 (1972), specifically recognized the rule that "exculpatory agreements otherwise valid are not construed to cover the more extreme forms of negligence —wilful, wanton, reckless or gross." 293 A.2d at 825. A release was enforced only in circumstances involving a claim of simple negligence.

Finally, movants urge the recent case of *Williams v. Cox Enterprises, Inc.*, 159 Ga. App. 333, 283 S.E.2d 367 (1981), involving a release executed by a runner in the Peachtree Road Race, who was hospitalized for heat stroke and other disorders as a result

---

1. This principle is stated in various ways. For example, "Except in cases prohibited by statute and cases where a public duty is owed, the general rule is that a party may exempt himself by contract from liability to the other party for injuries caused by negligence; and the agreement is not void for contravening public policy. Code § 102–106; *Hearn v. Central of Ga. R. Co.*, 22 Ga.App. 1, 3–7, 95 S.E. 368; *King v. Smith*, 47 Ga.App. 360, 364, 170 S.E. 546. The latter case is authority for the further proposition that an exculpatory provision like the one in this case does not relieve one from liability for wilful or wanton conduct. *Brady v. Glosson*, 87 Ga.App. 476, 478, 74 S.E.2d 253." *Hawes v. Central of Georgia R. Co.*, 117 Ga. App. 771, 772, 162 S.E.2d 14 (1968).

Also, "Provisions in rent and carriage contracts relieving the landlord or the carrier from liability for damages resulting from simple negligence on the part of such landlord or carrier have been upheld in Georgia as a legitimate matter for private contract and as not contravening the public policy of this State. *King v. Smith*, 47 Ga.App. 360, 364(2), 170 S.E. 546, and numerous cases therein cited. That case is authority for the further proposition that such a provision does not, however, relieve the landlord or carrier from liability for wanton and wilful conduct. See also *Sinclair Refining Co. v. Reid*, 60 Ga.App. 119, 122, 3 S.E.2d 121." *Brady v. Glosson*, 87 Ga.App. 476, 478, 74 S.E.2d 253 (1953).

of the race. The court there noted that "the General Assembly has enacted no statute which either expressly or impliedly forbids contractual waivers of liability by participants in sporting or recreational events. Since the waiver was not otherwise contrary to law or morality, we therefore hold that it was valid." *Id.* at 335, 283 S.E.2d 367. However, that case cannot support the proposition that such a release could be effective against a claim of gross negligence. Gross negligence was not alleged in that case.

The court concludes that the authority of Georgia and other jurisdictions is in agreement that one may exculpate himself for liability for his own simple negligence, but not for gross negligence—at least not in these circumstances.

The court notes that the record contains no evidence of the fashion in which the fatal mishap occurred. We have no evidence of gross negligence; we have only allegations of it. But the ground of the movants' summary judgment motion is not the absence of evidence of gross negligence; instead, they urge that the release bars the entire case, gross as well as simple negligence. The court cannot agree, and the motion must be denied on this point.

■ Turning to the second point of the motion, the court will consider the question whether plaintiffs may bring a wrongful death action or whether they are barred by the release. Plaintiffs argue that their cause of action for wrongful death is totally separate from any cause of action which Wade would have had had he lived, and therefore the release cannot bar them. The court disagrees.

First, some attention should be paid the question whether this is a release or a covenant not to sue. It is true that a release normally does not relate to a future or contingent claim. "Where a 'release' speaks in terms of a future or contingent claim . . . it is more accurately denominated 'a covenant not to sue.' . . . Thus a covenant not to sue is appropriately described as an agreement not to sue, given in exchange for lawful consideration. At the

time such an agreement is given, there is no claim in existence to be released. It speaks of the future, not of the present or past. Since no liability exists, none can be released." *Cash v. Street and Trail, Inc.,* 136 Ga.App. 462, 464, 221 S.E.2d 640 (1975).

It would thus appear that the document here in question is properly denominated a covenant not to sue; however, Ga.Code § 20–909, stating in part that "a covenant never to sue is equivalent to a release" in effect equates the two.

The more pertinent issue is whether plaintiffs may bring a cause of action if deceased himself would have been barred by the covenant not to sue. The answer under Georgia law is plainly no. Although it is true that the action created by the wrongful death statute is different from the cause of action which Wade would have possessed had he lived, any defense which would have been good against Wade is good against his representatives in a wrongful death action.

"Since the original statute of 1850 this court has consistently held that no recovery could be had unless the deceased in his lifetime could have maintained an action for damages for the injury to him, and that any defenses good as against the deceased would be good as against the action brought by the beneficiaries." *Thompson v. Watson,* 186 Ga. 396, 401, 197 S.E. 774 (1938). Accord, *Morton v. Georgia Railway and Electric Co.,* 145 Ga. 516, 89 S.E. 488 (1916); *Southern Bell Telephone & Telegraph Co. v. Cassin,* 111 Ga. 575, 36 S.E. 881 (1899); *Garvin v. Lovett,* 131 Ga.App. 46, 205 S.E.2d 124 (1974); *Rogers v. Johnson,* 94 Ga.App. 666, 678, 96 S.E.2d 285 (1956); *Bassett v. Calloway,* 72 Ga.App. 97, 33 S.E.2d 112 (1945).

Since the covenant not to sue would have barred deceased's cause of action for simple negligence, it will bar plaintiffs' cause of action for simple negligence under the Wrongful Death Act as well. But, the issue of gross negligence is not mooted by the covenant not to sue.

Accordingly, the motion for summary judgment is DENIED.