65511. LONG v. CITY OF MIDWAY et al.
65898. AMERICAN FIDELITY FIRE INSURANCE COMPANY
v. LONG.

BIRDSONG, Judge.

On April 7, 1978, the appellant Long filed a complaint alleging that Van's Enterprises, while engaged in the execution of a public contract to lay pipe for the city of Midway, damaged him (Long) by causing flooding upon his property and causing loss of business by leaving an open trench blocking access to his business premises for an excessive period (lasting for 18 months). Long named as co-defendants the city of Midway and Van's surety, American Fidelity Fire Insurance Company. American Fidelity and the city of Midway answered. Subsequently, American Fidelity filed its motion for summary judgment. As amended, the motion for summary judgment was granted on September 27, 1979. Long filed a notice of appeal within an appropriate time but the transcript was not filed in this court for a period of three years and then only after American Fidelity had informed Long that it was going to file a motion to dismiss the notice of appeal for lack of prosecution. American Fidelity did in fact file such a motion to dismiss which was denied by the trial court on the ground that though the delay was unreasonable, the fault lay with the clerk of court and not with appellant Long, and

thus was excusable. This court sustained American Fidelity's motion to dismiss the appeal concluding that the ultimate responsibility to perfect an appeal within a reasonable time lay upon the appellant and a two-year period of total inactivity could not be shifted to the clerk of court. *Long v. City of Midway,* 165 Ga. App. 602 (302 SE2d 372). On certiorari, the Supreme Court reversed this court's dismissal of the appeal and remanded the case for appropriate disposition. *Long v. City of Midway,* 251 Ga. 364 (306 SE2d 639).

At the time of his appeal, Long sought review of the propriety of the trial court's grant of summary judgment. American Fidelity cross-appealed the denial of its motion to dismiss the appeal. Consequently, we have still pending before us the propriety of the grant of summary judgment to American Fidelity and in substance to the city of Midway, which we will now consider upon its merits. *Held:*

The order in this case is excellently written and well-reasoned. Therefore, we will utilize a great portion of that order in reaching our decision in this case.

Procedurally, this record discloses that on January 10, 1979, American Fidelity filed its motion for summary judgment and amended same on February 15, 1979. Appellant Long filed no response to the motion for summary judgment prior to the hearing thereon held on July 27, 1979. However, on January 30, 1979, the city of Midway filed a response to the motion for summary judgment (though both Midway and American Fidelity are defendants in the case) and attached thereto an affidavit of the city's attorney, containing certain allegations regarding the intent of the parties in the contract for performance of Van's work for Midway. American Fidelity filed a motion to strike the affidavit on the grounds that the affidavit contained inadmissible conclusions. After the hearing on the motion for summary judgment, Midway attempted to amend its earlier response to the motion for summary judgment by filing on August 31, 1979, an additional affidavit by the city's attorney. On that same date (but after the hearing), Long amended his complaint by adding for the first time allegations of improper and detrimental actions by agents of American Fidelity in the performance of the contract after default by Van's Enterprises in the pipe-laying contract.

The facts giving rise to the complaint filed by Long showed that on April 22, 1975, the city of Midway entered into a contract with Van's Enterprises, Inc., for the construction of a water distribution system in Midway for a total contract price of $91,152.17. Pursuant to Code Ann. § 23-1705 (OCGA § 13-10-1), American Fidelity executed a bond guaranteeing the completion of the contract (performance bond) and a bond guaranteeing payment to all persons furnishing

labor or materials to the job (payment bond).

Van's defaulted on this contract with the city of Midway. In accordance with the authority included in the performance bond, American Fidelity completed the contract, and in doing so, as found by the trial court, expended sums in excess of the amount of the performance bond.

The trial court concluded that the issues raised by American Fidelity's motion for summary judgment were legal issues arising solely out of an interpretation of a contract and thus proper ones for determination by the court rather than by a jury's verdict. Any liability that American Fidelity might have to Long necessarily would be founded in and arise out of the contract for construction between Midway and Van's, as implemented by the performance and payment bonds executed by American Fidelity. The trial court found this to be true even though it considered the amendment filed by Long on August 31 contending American Fidelity's malfeasance contributed to the damages, for such amendment constituted nothing more than conclusions unsupported by supporting evidence. Moreover, in his deposition, which was considered by the court, Long admitted that the foundation of his claim for damages against American Fidelity was the bond written to assure performance by Van's and the failure of Van's to perform that contract, i.e., upon Van's malfeasance. Based upon this, the court concluded and we agree that Long's deposition statement that it was Van's malfeasance that gave rise to his claim constituted an admission which cannot be circumvented by an allegation in the pleadings, unsupported by evidence in the record. Thus, Long's amended complaint does not create a question of fact for submission to a jury. See *Strickland v. C&S Nat. Bank,* 137 Ga. App. 538, 540 (224 SE2d 504).

In view of the clear and unambiguous language of the contract between Van's and Midway, it was the duty and within the authority of the trial court to construe the contract. OCGA § 13-2-1 (Code Ann. § 20-701); *Mergenthaler Linotype Co. v. Glover Printing &c. Co.,* 58 Ga. App. 634 (199 SE 756). This conclusion is further strengthened by the fact that the issue raised as to the interpretation of the contract and bonds was raised by counsel for appellee Midway and not by appellant Long. Midway's testimony, by affidavit of the city's attorney, is inadmissible in light of the provisions of OCGA § 13-2-2 (1) (Code Ann. § 20-704) precluding the variance of a written contract by a parol amendment. Additionally, the affidavit contained nothing more than a naked conclusion as to the ultimate issue unsupported by factual evidence and thus was inadmissible for the purpose of reaching a determination as to American Fidelity's motion for summary judgment. *Matthews v. Wilson,* 119 Ga. App. 708 (168

SE2d 864). Inasmuch as the affidavit by Midway's attorney constituted inadmissible evidence, the trial court properly did not consider the same in resolving American Fidelity's summary judgment. OCGA § 9-11-56 (e) (Code Ann. § 81A-156). The trial court also concluded that the amendment to Midway's response to the motion for summary judgment having been filed long after the hearing thereon, would not be considered in that disposition. The trial court did not err in rejecting the affidavit. OCGA § 9-11-56 (c) (Code Ann. § 81A-156).

As to the liability of American Liability to Long under the terms of the performance and payment bonds, we agree with the trial court that these bonds were issued pursuant to OCGA § 13-10-1 (Code Ann. § 23-1705), as implemented by OCGA § 36-82-104 (Code Ann. § 23-1708). Two separate paragraphs of the contract between Midway and Van's dealt with financial protection. One paragraph required Van's to procure liability and other forms of insurance (i.e., workers' compensation, etc.) under the contract title of "insurance." In a separate section entitled "security," Van's was required to obtain performance and payment bonds. As we read (and as the trial court concluded), the payment bond under the provisions of OCGA § 36-82-104 (Code Ann. § 23-1708) was designed to protect those persons who under the contract are entitled to payment for labor or material furnished to the contractor. Moreover, the obligee of the performance bond, Midway, is the party entitled to maintain an action upon the breach of the performance bond. As found by the court and supported by the record, Long did not furnish any material or labor on the project contemplated by the contract. Neither was Long a party to the performance bond; the sole parties thereto being Midway and American Fidelity. Although there appear to be no Georgia cases on this point, other jurisdictions facing the same issue have held that a performance bond should not substitute for public liability insurance. See City of Univ. City v. Frank Miceli & Sons Realty &c. Co., 347 SW2d 131 (Mo. 1961).

The contract in the instant controversy provided an unequivocal requirement that the contractor obtain liability insurance for the protection of any person injured or damaged through the negligent acts of the contractor or those working under him, in addition to a separate requirement for a payment and performance bond. This separate requirement for liability insurance highlights the intent of the parties to the contract that the requirement for the obtention of a performance bond was for the protection of the obligee of the bond, the city of Midway. OCGA § 36-82-104 (Code Ann. § 23-1708) further clarifies this conclusion for that statute provides that the obligee (Midway) is the only party to

have the right of action under the performance bond. Thus, the conclusion is inescapable that Long has no right of action under the terms of the performance bond obtained by Van's for the protection of the obligee, Midway.

Moreover, under the facts of this case, American Fidelity expended the entire amount of its performance bond in the completion of the contract. Therefore, if American Fidelity could be held liable for the alleged tortious damage to Long's property, the penalty bond necessarily could be reduced to a point where the intended purpose of the bond, the completion of the contract, would have been reduced or destroyed. This reasoning is well stated in the case of John L. Roper Lumber Co. v. Lawson, 195 NC 840, 847 (143 SE 847, 850) wherein the North Carolina court held: "In order to build highways it is necessary, of course, that laborers and materialmen be satisfied that their just claims will be paid. The bond with this provision gives a credit to a contractor. This is the primary object of the bond required by the State Highway Commission and, of course, indemnifying the State Highway Commission against loss. If tort claimants are permitted to share in the amount of the bond equally with claimants for labor and material, such claimants can never be certain they will be paid, because a great many tort claims for personal injuries and injury to property would materially reduce or amount to perhaps, in some instances, more than the penalty of the bond. If actions for a tort like the present or personal injuries are contemplated, this should be fully and clearly provided for by the surety bond in reasonably clear language. The remedy of plaintiffs is against the contractors. If the contractors are insolvent, it is plaintiff's misfortune."

In reviewing the Georgia statutes under which the performance and payment bonds were issued in this case, there is no indication that the legislature intended to provide protection for third party claimants in addition to those actually providing labor or materials on the bonded contract. Certainly had the legislature so intended, it could easily have provided language in the statute sufficient to extend coverage under such bonds. The Georgia bonding statute commonly is referred to as the little "Miller Act." The Fourth Circuit Court of Appeals in relation to the Miller Act (40 USC § 270 (A) and (B)) has considered a question similar to that raised in this case. That court concluded under the Miller Act a claim such as the one being advanced by Long is not within the language or protection afforded by the Miller Act, nor does the legislative purpose of the Miller Act provide such protection. That purpose was to provide protection for those furnishing labor and materials for government construction, protection equivalent to that furnished in the case of private

construction by mechanic's and materialman's liens. United States v. Harman, 192 F2d 999 (4th Cir. 1951).

Likewise, as we construe them, the primary purpose of the bonds under pertinent Georgia statutes, is to guarantee the public that the project in question will be performed and that the cost of performance will be met by the contractor. Because those who furnish labor, material and services do not have the right to file a lien against publicly owned property, the only protection under such circumstances is a bond for the benefit of those parties. If this court were to extend the coverage of such bonds to cover claims by third party tort claimants for damage either to person or property, it would have the effect of allowing personal injury or property damage claimants to compete with or exhaust funds designed to guarantee the payments for labor or material arising out of public contracts. We conclude that unless the surety contracts expressly provide for third-party liability coverage, third-party claimants such as Long should look for coverage under liability insurance to be provided by the contractor, a contractual requirement imposed upon Van's in this case.

Moreover, American Fidelity's motion for summary judgment as amended, is supported by affidavit evidence asserting that payments made by American Fidelity in the completion of the work have exceeded the penalty sum of the bond. That evidence is uncontradicted by any admissible evidence in the record. The law of this state is that the surety cannot be held liable on a bond for a sum greater than the penal sum of the bond. *Westbrook v. Moore,* 59 Ga. 204 (1877). To increase the limits of liability would violate that principle. *Houston Gen. Ins. Co. v. Brock Constr. Co.,* 241 Ga. 460 (246 SE2d 316). Therefore assuming for purposes of argument only that Long could have enforced his third-party claim against American Fidelity, that claim would have been defeated because American Fidelity had already expended sums in excess of the face value of the performance bond.

On the basis of the preceding, we conclude that American Fidelity has pierced the pleadings of Long and demonstrated the absence of any genuine issues of material facts. Accordingly, the trial court did not err in granting summary judgment to American Fidelity. *Holland v. Sanfax Corp.,* 106 Ga. App. 1, 4 (126 SE2d 442); *Raven v. Dodd's Auto Sales &c.,* 117 Ga. App. 416 (160 SE2d 633).

*Judgment affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 29, 1983.

*Alvin G. Wells, Jr.,* for appellant (case no. 65511).
*J. Sidney Flowers, James B. Franklin, Kenneth W. Krontz, Christopher C. Howard, Jr.,* for appellees.
*James B. Franklin,* for appellant (case no. 65898).
*Alvin G. Wells, Jr., J. Sidney Flowers,* for appellee.