Eleanor M. HARRIS, Plaintiff,

v.

NATIONAL EVALUATION SYSTEM, INC., Defendant.

Civ. A. 4:88–cv–45–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

Aug. 1, 1989.

John Meredith Graham, III, James Dickson Maddox, Shaw Maddox Graham Monk & Harris, Rome, Ga., for plaintiff.

Phillip S. McKinney, Linda Owens Vinson, Rogers & Hardin, Atlanta, Ga., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

Defendant National Evaluation System, Inc. (NES), moves the Court to enter summary judgment on Plaintiff Harris' claim that NES is liable for injuries flowing from its negligence. Alternatively, NES seeks partial summary judgment in that, it contends, Harris is not entitled to damages for mental stress in the absence of a physical injury. Harris opposes NES' motion.

The undisputed facts pertaining to the summary judgment motion are as follows. Harris, a teacher for the deaf, took an examination administered by NES. Under the Quality Basic Education Act (QBEA), O.C.G.A. § 20–2–130 *et seq.*, Harris was required to take the examination in order to renew her teaching certificate. NES reported that she had failed the test, and the Superintendent of her school gave her the option of resigning or being demoted to the position of a "Senior Clerk." Harris chose the latter.

Subsequently, NES received a request to rescore another examinee's test. When it did so, it discovered an error in the scoring of all the tests due to the fact that the number of questions had been increased to 120 from the previous 104 questions. The examination is comprised of both multiple choice and short answer questions. The multiple choice questions are scored by an optical scanner and the short answer questions are scored by hand. The numbers are then totaled by a computer. In her brief, Harris summarizes NES' error as follows:

[NES] programmed the Prime computer to receive 120 items. It programmed the IBM PC scorer for 120 items. The problem was, the program did not provide for transmission of 120 items from the Prime computer to the IBM PC scorer. It only transmitted 104 items. The PC scored an unanswered question as though it were a wrong answer. This meant that sixteen of Mrs. Harris' answers were considered wrong. All of the scoreable answers out of that sixteen counted off on her score.

Upon discovering its error, NES recomputed Harris' score, and reported the corrected, passing, score to the school officials. Harris was thereupon reinstated to her teaching position. Harris contends that NES' negligence, including its failure to hand score the test, has damaged her financially and emotionally and has exacerbated a physical malady.

NES presents three general issues in its summary judgment motion: (1) that its communication of Harris' score is "privileged" under Georgia law; (2) that Harris signed an "exculpatory clause" that bars her claim; and (3) that even if Harris' claim is actionable, she may not recover damages for mental stress because no physical injury resulted.

Harris responds that the privilege statute does not apply because this is not a defamation action; that the exculpatory clause is inapplicable to her negligence action and, moreover, the clause is void as against public policy; and mental stress damages are recoverable.

Pretermitting the privilege issue, the Court finds that the exculpatory clause is enforceable. The clause, contained in the registration form, reads as follows:

I understand that liability for accurate test materials and adequate administration conditions will be limited to score correction or test retake at no additional fee. I waive rights to all further claims against the Georgia Department of Education and National Evaluation Systems, Inc.

The form stated further that any objection to the quoted language must made be in writing to NES. A subsequent paragraph recited that Harris read and understood the form and agreed to be bound by its terms.

Harris argues, initially, that the language of the clause does not cover her negligence claim because " 'test materials' constitute the materials furnished at the time of the test and 'administrative conditions' refers to the physical facilities and surroundings where the test was taken." Brief in Opposition at 10. As Defendant responds, however, Reply Brief at 15–16, Harris is not challenging the test materials or the administrative conditions, but is seeking damages flowing from the negligent scoring of her test. Her negligence claim is therefore covered by the "all further claims" language of the clause.[1]

■ Harris argues further that the clause contravenes public policy. Under Georgia law,

[a] contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law.

*Department of Transportation v. Brooks*, 254 Ga. 303, 312, 328 S.E.2d 705 (1985). "[C]ourts must exercise extreme caution in declaring a contract void as against public policy," and should do so only "where the case is free from doubt and where an injury to the public interest clearly appears." *Porubiansky v. Emory University*, 248 Ga. 391, 393, 282 S.E.2d 903 (1981). "[E]ach case requiring public policy considerations must be carefully weighed on its own merits, and by applying the appropriate legal guideline to the particular facts presented to the court." *National Consultants, Inc. v. Burt*, 186 Ga.App. 27, 32, 366 S.E.2d 344, *grant of cert. vacated*, 258 Ga. 645, 374 S.E.2d 532 (1988).

Harris relies primarily on *Porubiansky*, where the court ruled that an exculpatory clause in a contract for dental services was void as against public policy because the practice of dentistry is licensed and controlled by the state and, under a statute, medical practitioners must exercise "a reasonable degree of care and skill." The Georgia Supreme Court explained that the state's concern for health and safety, as embodied in that statute, was an assertion of public policy that would be contravened if the contract were enforced. 248 Ga. at 393–95, 282 S.E.2d 903.

■ After considering the relevant cases and the parties' arguments, the Court concludes that enforcing the clause in Harris' case does not contravene public policy in Georgia. The examination was given pursuant to the requirements of the QBEA. The asserted public policy behind the QBEA is to "assure that each Georgian has access to quality education, as defined in this article, designed to improve upon a student's learning capacity." O.C.G.A. § 20–2–131. Admittedly, test scores must be reported accurately in order to assure student access to quality education, and the erroneous reporting of a passing grade could contravene that public policy if an unqualified teacher were employed. However, although the negligent reporting of a failing score could keep a qualified teacher out of the classroom, student access to quality education would not be impaired so long as other qualified teachers are available.

On the facts presented in this case, *National Consultants, Inc. v. Burt*, 186 Ga. App. at 32, 366 S.E.2d 344, and given the "extreme caution" with which a court should declare a contract void as against public policy, *Porubiansky v. Emory University*, 248 Ga. at 393, 282 S.E.2d 903, the Court concludes that "no injury to the public interest clearly appears" from the enforcement of the exculpatory clause in the registration form that Harris signed. *See Petroziello v. United States Leasing Corp.*, 176 Ga.App. 858, 860, 338 S.E.2d 63 (1985). Although Harris' interests certainly are implicated, there is no showing of an injury to the *public* interest in *this* case.

---

**1.** The Court rejects Harris' contention that a jury must determine whether her negligence action is covered by the exculpatory clause: under Georgia law, it is the duty of the court to construe the terms of clear and unambiguous language of a contract. *Long v. City of Midway*, 169 Ga.App. 72, 74, 311 S.E.2d 508 (1983); O.C. G.A. § 13–2–1. The terms of the exculpatory clause in the instant action are clear and unambiguous.

The decision in *Porubiansky* is distinguishable on that basis.

The Court's inquiry cannot end here, however, because Georgia law holds that one may not exculpate oneself from liability for gross negligence. *Wade v. Watson*, 527 F.Supp. 1049, 1052 (N.D.Ga. 1981), *aff'd*, 731 F.2d 890 (11th Cir.1984). "Gross negligence has been defined as 'the want of slight care and diligence,' 'such care as careless and inattentive persons would usually exercise under the circumstances,' 'want of that diligence which even careless men are accustomed to exercise,' 'carelessness manifestly materially greater than want of common prudence,'...." *Rider v. Taylor*, 166 Ga.App. 474, 304 S.E.2d 557 (1983) (citations omitted); *see also* O.C.G.A. § 51-1-4.

A jury question is presented only when reasonable men could disagree as to whether the facts alleged constitute gross negligence. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2511-12, 91 L.Ed.2d 202 (1986); *McDaniel v. Gysel*, 155 Ga.App. 111, 270 S.E.2d 469 (1980), *quoting Wood v. Olson*, 104 Ga.App. 321, 322, 121 S.E.2d 677 (1961).

In arguing that the evidence supports a finding of gross negligence, Harris states as follows:

> It is obvious that NES was guilty of the grossest sort of negligence in handling the test administered to Eleanor Harris. There were 120 questions on the test. The examinee's responses were put into a Prime computer. The program for scoring the test was put into an IBM PC computer. The software designed by NES to handle the scoring only transferred the first 104 responses from the Prime to the IBM PC. The effect was that all of the correct response Mrs. Harris had given to the last 16 questions were counted as wrong.

Supplemental Brief at 7. Harris emphasizes that NES did not fulfill its contractual obligation to hand score the examination, which would have avoided the error in scoring and reporting her score.

Contrary to Harris' contention, the evidence does not show that NES was obligated to hand score each examination.[2] The error affecting Harris was made in programming the computers. Although Harris was harmed by NES' oversight, a reasonable man could not find its mistake to constitute "gross negligence" under the definition quoted above.

In conclusion, the Court finds that Harris' agreement to waive the negligence claim against NES that she has asserted in this action is enforceable. NES' contentions that its communication is privileged and that Harris cannot recover damages for emotional harm need not be reached.

ACCORDINGLY, Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

---

2. The pertinent language cited by Harris reads as follows: "NES checks the computer-generated scores against a *sample* of hand-scored answer sheets to insure accuracy of the procedures." Aff. of Pinsky, Exh. B at 11 (emphasis added).