PETER ZAVRAS *VS.* CAPEWAY ROVERS MOTORCYCLE CLUB, INC.

No. 96-P-610.

Essex. September 26, 1997. - November 26, 1997.

Present: PERRETTA, DREBEN, & PORADA, JJ.

*Release. Negligence,* Contractual limitation of liability, Gross negligence. *Contract,* Release from liability. *Practice, Civil,* Summary judgment.

The owner of the premises at which organized motor dirt bike races were held did not exempt itself from liability for its gross negligence by requiring participants in races to sign a release as a condition of participating. [18-19]

In a civil action in which two claims of gross negligence were asserted against the owner of premises at which organized motor dirt bike races were held, the judge correctly entered summary judgment in favor of the owner on the claim of negligent hiring of a certain flagman but should not have granted summary judgment on the claim that the owner was vicariously liable with respect to the alleged gross negligence of the flagman. [19-22]

CIVIL ACTION commenced in the Superior Court Department on December 9, 1994.

The case was heard by *Joseph A. Grasso, Jr.,* J., on a motion for summary judgment.

*John P. McGloin* for the plaintiff.

*Richard W. Jensen* for the defendant.

DREBEN, J. Peter Zavras was injured while a participant in a motor dirt bike (motorcycle) race at the defendant's premises in Middleborough. He filed a three-count complaint which, as amended, alleged the following: negligence in failing to provide suitable flag holders to protect the participants from accidents (count one); gross negligence in providing incompetent minor children to act as "flagmen" (count two); and gross negligence by the "flagman" in acting in an extremely careless manner and in reckless disregard of the consequences (count three).

After discovery, the defendant filed a motion for summary

judgment based upon a release signed by Zavras as a condition of participating in the races of the New England Sports Committee (NESC).[1] The motion judge, assuming, but without deciding, that a release does not bar an action for gross negligence, entered summary judgment for the defendant. Under the principles of *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991), he ruled the plaintiff would not be able to prove that the defendant was grossly negligent. He concluded that the mere youth of the flagman was an insufficient showing to meet the heightened burden imposed on the plaintiff by his allegations of gross negligence. Although aware that the complaint (count three) contained allegations of liability of the defendant on the theory of respondeat superior by reason of the gross negligence of the flagman, the judge did not discuss this claim or indicate why summary judgment was allowed on this count.

1. *Effect of release.* The execution of the release barred the negligence count and entitled the defendant to summary judgment under Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). A defendant ordinarily may "validly exempt itself from liability which it might subsequently incur as a result of its own negligence." *Lee* v. *Allied Sports Assocs.*, 349 Mass. 544, 550 (1965) (racing cars). *Cormier* v. *Central Mass. Chapter of the Natl. Safety Council*, 416 Mass. 286, 288-289 (1993) (motorcycles). Both of those cases involved injuries at tracks, circumstances in which the plaintiffs voluntarily placed themselves in potentially dangerous situations.

Although no Massachusetts appellate court has decided whether a defendant may also exempt itself from its own gross negligence, both the Supreme Judicial Court and this court have noted that releases are effective against liability for *ordinary* negligence. *Lee* v. *Allied Sports Assocs.*, 349 Mass. at 551. *Gonsalves* v. *Commonwealth*, 27 Mass. App. Ct. 606, 608 n.2 (1989).

---

[1] The terms of the release were as follows: "I agree to conform to and comply with all the rules set forth by the New England Sports Committee and the promoting organizations, and I further agree to hold blameless the New England Sports Committee, its officers and officials, all event officials, and promoting organization officers and officials, *the owner of the premises*, or any officers thereof, and other riders and mechanics, for any loss or injury to me or to my property, to assume all responsibility for doctor, ambulance expense, hospital expenses, and medical expenses and any loss or injury to me and/or to personal property in which I may become involved by reason of participation in any N.E.S.C. sanctioned event." (Emphasis supplied.)

Substantial authority elsewhere, often in the racetrack context,[2] including leading texts,[3] and a Federal court applying Massachusetts law, *Gillespie* v. *Papale*, 541 F. Supp. 1042, 1046 (D. Mass. 1982), take the position that while a party may contract against liability for harm caused by its negligence, it may not do so with respect to its gross negligence.

Even where simple negligence is alleged, our cases, for policy reasons, are cautious in enforcing releases against liability and in certain circumstances decline to do so: e.g., where a release attempts to shield a defendant from responsibility for violation of a statutory duty, *Henry* v. *Mansfield Beauty Academy, Inc.*, 353 Mass. 507, 511 (1968), where a public utility attempts to limit its liability, or where there is an obvious disadvantage in bargaining power so that the effect of the contract is to put a party at the mercy of the other's negligence. See Prosser & Keeton, Torts § 68, at 482 (5th ed. 1984); *Gonsalves* v. *Commonwealth, supra.* See generally Restatement (Second) of Contracts § 195 & comments a & b (1981). In view of this caution in Massachusetts and the persuasive authority elsewhere discouraging aggravated wrongdoing, see Prosser & Keeton, *supra* at 484, we hold that the release did not exempt the defendant from liability for grossly negligent conduct.

2. *Gross negligence.* Since the release does not absolve the defendant from liability for gross negligence, we turn to the question whether summary judgment should have been entered for the defendant on the plaintiff's claims of gross negligence. As will be remembered there were two such claims, gross negligence in hiring and gross negligence by the flagman, attributable to the defendant on principles of vicarious liability.

The distinction between ordinary negligence and gross

[2]See, e.g., *Wade* v. *Watson*, 527 F. Supp. 1049, 1052 (N.D. Ga. 1981), aff'd, 731 F.2d 890 (11th Cir. 1984) (applying Georgia law); *Winterstein* v. *Wilcom*, 16 Md. App. 130, 136 (1972); *Adams* v. *Roark*, 686 S.W.2d 73, 75-76 (Tenn. 1985); *Smith* v. *Golden Triangle Raceway*, 708 S.W.2d 574, 576 (Tex. Ct. App. 1986).

[3]See Restatement (Second) of Contracts § 195 (1981) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy"); 6A Corbin, Contracts § 1472, at 596-597 (1962) ("such an exemption [from liability] is always invalid if it applies to harm wilfully inflicted or caused by gross or wanton negligence"); Prosser & Keeton, Torts § 68, at 484 (5th ed. 1984) ("such agreements generally are not construed to cover the more extreme forms of negligence, described as willful, wanton, reckless or gross . . .").

negligence as applicable in Massachusetts was defined and explained in *Altman* v. *Aronson*, 231 Mass. 588, 591-592 (1919), and is set forth in the margin.[4] Basically, it "is very great negligence, or the absence of slight diligence, or the want of even scant care." *Id.* at 591.

We turn to the recitation of facts which the judge considered undisputed for purposes of the motion for summary judgment (the parties do not contend otherwise) and quote from his memorandum:

> "The dirt bike race occurring on May 9, 1993 at [the defendant's] premises was an NESC sanctioned event. The race course had a series of 'jumps.' [The defendant] hired individuals to hold yellow flags and to raise the flags when the area of the raceway past the jumps was not clear due to some obstruction such [as] a fallen rider or bike on the raceway. A rider in front of Zavras fell going over a jump. When Zavras went over, he fell onto this rider. At least two more riders went off the jump, and as Zavras began to get up, the wheel of the second rider's bike hit Zavras' head causing a closed-head injury.

---

[4]"Negligence, without qualification and in its ordinary sense, is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances. It is a want of diligence commensurate with the requirement of the duty at the moment imposed by the law.

"Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. . . . It falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is or ought to be known to have a tendency to injury."

"During the course of the race, the flagger holding the yellow flag in the vicinity of the jump in question never raised his yellow flag. Instead, he watched the pileup. The individual holding the flag was observed by a witness as being 'a very young kid with a baby face.' In the opinion of the witness, the individual was 'ten to thirteen' years old."

a. *Claim of negligent hiring.* This claim was based on the deposition of a witness to the accident who testified that the flag waver in question was "a very young kid with a baby face" who was approximately "ten to thirteen years old." The judge ruled that the testimony of one witness that the flag waver appeared young, without more, could not form the sole basis of a claim for gross negligence at the summary judgment stage. As the judge noted, there was no evidence that the defendant acted in gross disregard for others, that it violated any regulation, that similar raceways hire older flag wavers, that it had notice that a young flag waver could be dangerous, or that younger flag wavers are less effective than older ones.

On summary judgment the burden is on the moving party to show that there is no genuine issue as to any material fact. "This burden need not be met by affirmative evidence negating an essential element of the plaintiff's case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial." *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 809 (1991), citing *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. at 716. The question before the judge was "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Flesner* v. *Technical Communications Corp.*, supra, quoting from *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While recognizing that summary judgment is rarely granted in negligence actions, *Manning* v. *Nobile*, 411 Mass. 382, 388 (1991), we agree with the motion judge that although probably sufficient to sustain an ordinary negligence claim, see *Foster* v. *The Loft, Inc.*, 26 Mass. App. Ct. 289, 290 (1988); cf. *Tryon* v. *Lowell*, 29 Mass. App. Ct. 720, 722 (1991), the evidence of youthful appearance alone did not meet the heightened burden imposed by the allegations of gross negligence. Cf. *Stokes* v. *Bullins*, 844 F.2d 269, 275 (5th Cir. 1988); *Wassum* v. *Bellaire*, 861 F.2d 453, 456 (5th Cir. 1988).

b. *Claim of gross negligence by the flagman.* The actions of

the flagman, however, could be found by a jury to be grossly negligent, that is, to show "a want of even scant care." While it is unclear from the record exactly how long the flagman was inattentive to the safety of the participants and just looking at the pileup, the time was sufficient for three racers in addition to the original fallen racer to go over the jump. There was also deposition testimony that spectators recognized the danger and yelled at the flagger to wave the flag. "[E]ven where the inattention was only momentary, a jury has been allowed to find gross negligence where the inattention occurred in a place of great and immediate danger." *Dinardi* v. *Herook*, 328 Mass. 572, 574 (1952), and cases cited at 574-575. See *Granger* v. *Lovely*, 302 Mass. 504, 505, 507 (1939) (jury warranted in finding driver grossly negligent where he took his eyes off road for "less than a second" in dangerous situation). Compare *Simmons* v. *American Motorcyclist Assn., Inc.*, 69 Ohio App. 3d 844, 847 (1990).

The defendant's motion for summary judgment should not have been granted with respect to the alleged gross negligence of the flagger. Therefore, the judgment as to counts one and two is affirmed; the judgment as to count three is reversed; and count three is remanded for trial.

*So ordered.*