Rup, J.
This controversy arises out of a bicycling accident at a camp for diabetic girls, the Clara Barton Camp for Girls with Diabetes[2] (“the camp”), in Oxford, Massachusetts, in August 1993. The injured youth, Cherish Eastman (“the plaintiff’), filed this action against the camp’s executive director, Shelley Yeager (“Yeager”), its director, Kathryn Gregorio-Palmer (“Gregorio-Palmer”), the assistant director, Maria Lang (“Lang”), and two camp counselors who led the bicycle ride, William Yutzy (“Yutzy”) and Shana Paige Her-mans (“Hermans”), alleging that each is liable for negligence, gross negligence, and/or reckless conduct. The defendants, in turn, seek indemnification from the plaintiffs mother, third-party defendant Debra Eastman (“Eastman”), based on a release she signed in the application for the plaintiffs admission to the camp. The defendants now move for summary judgment against the plaintiff, asserting that she cannot prove, as a matter of law, the essential elements of the alleged torts. The third-party defendant also moves for summary judgment contending that the indemnification clause does not run in favor of these defendants. For the following reasons, both parties’ summary judgment motions are denied.
BACKGROUND
The summary judgment record includes the following material facts.
When she was approximately 8 years old, the plaintiff was diagnosed with insulin-dependent diabetes mellitus Type 1. In 1993, when the plaintiff was fifteen years old, she applied for and enrolled in the camp’s summer session scheduled for August 8-20, 1993. The camp is residential and is staffed with personnel trained in blood glucose monitoring, treatment of high and low blood sugars, insulin administration, general emotional and physical health care of children, coordination and safety, and leadership training.
The summer camp program offered many activities, including bike riding. During her stay at the camp, the plaintiff had participated daily in bike rides along with one other camper, Stacey LaRiviere (“LaRiviere”), and two counselors, Yutzy and Hermans. Each day this group took a different bike route but, prior to her accident on August 14, 1993, the plaintiff had never ridden down Clara Barton Road, which is narrow, steep, windy and unevenly paved. On August 14, 1993, the plaintiff and this same group of bikers met at a barn on or near camp property. Both the plaintiff and LaRiviere told Yutzy and Hermans that they did not want to ride their bikes on Clara Barton Road; however, the counselors overruled them, and the group prepared to ride their bikes on that road.
Camp rules require bikers always to ride in a single file, to the right of the road, and to watch for road hazards. The camp’s safety rules for bicycling warn: “These are dangerous, uneven roads. Be constantly on alert for potholes, loose gravel and sand, sharp turns and blind sections along the route.” The rules direct camp counselors to “(elmphasize control on downhills. Loss of control on down hills seem (sic) to account for a high percentage of non-motor related accidents.” Camp rules provide that prior to beginning a typical bicycle ride, the lead counselor should wait for the other counselor(s) and campers at the barn, check the campers’ equipment, ascertain that the children’s blood sugar was not low, and ascertain each participants’ readiness.
On the day at issue, Hermans and LaRiviere set out several minutes ahead of Yutzy and the plaintiff, who were delayed while Yutzy adjusted the plaintiffs bike helmet. After Yutzy and Hermans started biking, Yutzy directed the plaintiff to shift into a higher gear and pedal in order to catch up to Hermans and LaRiviere. Yutzy passed the plaintiff, leaving her behind. As a result of following Yutzy’s instructions, the plaintiff was riding at a speed faster than she preferred. While riding in this manner, the plaintiff passed LaRiviere, made contact with LaRiviere’s handlebar, and shortly *74 thereafter made contact wilh the rear tire of Hermans’ bicycle. The plaintiff lost control of her bike which flipped over several times. The plaintiffs fall left her comatose for several days, with a dislocated left shoulder, and with partial paralysis.
Additional facts will be included as necessary below to address the parties’ motions.
DISCUSSION
Summary judgment is appropriate if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that, as a result, that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
I. The Defendants’ Summary Judgment Motion.
“Ordinarily, summary judgment is not an appropriate means to resolve negligence cases, because usually the question of negligence is one of fact.” Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994), citing Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983). A judge may decide the issue of negligence as a matter of law when no rational view of the evidence permits a finding of negligence. Roderick, supra. This principle applies to claims of reckless conduct, Inferrera v. Sudbury, 31 Mass.App.Ct. 96, 103 (1991), and gross negligence, cf. Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass.App.Ct. 17, 22 (1997).
A. Claims Against William Yutzy (Count I) and Shana Paige Hermans (Count (III)
The defendants assert that, on the undisputed facts, the plaintiff cannot prove as a matter of law that their negligence, rather than some other cause for which they are not responsible, caused the plaintiffs accident. The defendants rely in part upon the deposition of the plaintiff who, because of her comatose state immediately following the accident, has no recollection of the accident. They also rely on the depositions of the camp counselors leading the bike ride, who did not see the accident occur, and LaRiviere, who did not know how the accident happened. The defendants argue that this testimony compels the conclusion that the cause of the accident is unknown and, thus, that the plaintiff will not be able to prove the defendants’ negligence.
Contrary to the defendants’ argument, the summary judgment record is replete with disputed facts regarding events which led up to and arguably caused the accident. It is not immaterial that Yutzy and Hermans disregarded several camp safety rules, such as riding in single file, obeying speed limits, and emphasizing bikers’ control when proceeding downhill. Yutzy’s direction to the plaintiff to shift into a higher gear and to pedal in order to catch up with the rest of the group may have caused the plaintiff to pedal faster than she would have preferred. until she rode too fast to brake safely. Furthermore, the parties dispute whether Yutzy’s conduct substantially contributed to the plaintiffs loss of control of her bicycle.
The plaintiff alleges that Hermans was negligent by violating a camp rule that staff not commence bike rides until both leaders are ready, and then leaving Yutzy and the plaintiff behind. This conduct, the plaintiff argues, left Yutzy to choose between hurrying to catch up with Hermans and LaRiviere so that the group could ride together (as required by the camp rules) or maintaining a safer bike pace (also required by the rules).
The parties dispute whether Yutzy and Hermans were sufficiently experienced and trained in bicycle riding and activity leadership to have co-led the plaintiffs bike ride.
The defendants have not met their burden of affirmatively demonstrating the absence of a triable issue on causation, which is generally a question for the jury. See Solimene v. B. Grauel & Co. KG, 399 Mass. 790, 794 (1987). It cannot be said that no rational view of the evidence permits a finding that Yutzy’s and Hermans’ conduct amounted to negligence, gross negligence or reckless conduct. See Zezuski v. Jenny Mfg. Co., 363 Mass. 324, 327 (1973). Consequently, summary judgment is inappropriate as to Counts I and III.
B. Claim Against Maria Lang (Count V)
The plaintiff claims that Lang owed her a special duty of care, and breached that duty by failing to supervise the plaintiffs activities adequately, and by failing to adequately train and/or supervise Hermans and Yutzy.
Lang served as the camp’s Program Director from 1986 through 1996. In that capacity, she supervised staff and campers, assigned staff to activities, and assigned counselors to lead the particular activities. Her responsibilities included reviewing with the counselors the components of the activities. Lang was responsible for overseeing camp programs, including all the campers’ activities. She had responsibility for training the counselors in the activities and she alone supervised the counselors who directed the campers’ activities. The counselors directly reported to Lang and Lang had direct responsibility for the counselors.
Lang made it her practice to ask about each counselor’s experience with respect to each activity he or she would lead. She had no specific recollection of asking Yutzy or Hermans about their prior bicycling experiences, but claims she would have in order to place them in their roles as bicycle leaders. She asserts that prior to the plaintiff s accident, she heard nothing which raised any questions about *75 Yutzy’s or Herman’s bicycle ridingleadership abilities or safety practices.
Lang’s direct, personal involvement in training and supervising Yutzy and Hermans, in assigning them to the bicycle riding activity, and in overseeing this activity can be the basis for liability for negligent training and/or supervision of Yutzy and Hermans. She has failed to demonstrate that she is entitled to judgment as a matter of law.
C. Claim Against Kathryn Gregorio-Palmer (Count H)
The plaintiff alleges that Gregorio-Palmer (I) failed to adequately supervise the plaintiffs activities, and (2) failed to properly and/or adequately train and/or supervise the defendants Lang, Hermans, and Yutzy.
In 1993, Gregorio-Palmer was the camp’s director. As such, she was responsible for recruiting, hiring, training, supervising, assigning, and evaluation of seasonal staff, creating and implementing new programs for children and families, overseeing operation of the summer camp, ensuring compliance with the American Camping Association Standards, ensuring the effective operation of the camp and participating in all camp programs to provide guidance and supervision. During the annual precamp training in 1993, Gregorio-Palmer issued all staff, including Yutzy and Hermans, manuals which included bicycle regulations. During pre-camp season training sessions, she reviewed with camp staff the rules and regulations of the camp and each program activity or directed staff to read those rules and regulations. However, in her affidavit filed in support of summary judgment, Gregorio-Palmer states that while it was her responsibility to “participate in all camp programs for the purpose of guidance and supervision,” she did not directly participate in or monitor any particular camp bicycling activity following the pre-camp training. Her affidavit also states that she did not consider it her responsibility to supervise Lang.
Because Gregorio-Palmer was responsible for training and supervising Yutzy and Hermans, and responsible for providing guidance and supervision by participating in all camp programs, a genuine issue of material fact exists as to whether she was negligent in doing so and, if so, whether any breach of her duty of care caused the plaintiffs injuries. Summary judgment is not appropriate as to the claim against Gregorio-Palmer.
D. Claim Against Shelley Yeager (Count IV)
The plaintiff alleges that Yeager, through negligence, gross negligence and/or reckless conduct, can be held liable for the plaintiffs injuries because she: (1) breached a special duty of care she owed the plaintiff; (2) negligently supervised the plaintiffs activities; and (3) negligently trained and/or supervised Gregorio-Palmer, Lang, Hermans and Yutzy in the performance of their duties at the camp.
Like the other defendants, Yeager argues that the there is no triable issue as to causation. However, as noted above, the summary judgment record contains material disputed facts on this issue.
Yeager also claims; (1) as the camp’s executive director, she cannot be held liable because she did not personally participate in, lead, direct or supervise camp bicycling; and (2) there is no evidence that she knew or should have known that hiring and retention of the other four defendants would pose an unreasonable risk of injury to the plaintiff.
As executive director, Yeager was responsible for the camp’s administration, fiscal management, management of permanent staff, implementing and evaluating camp programs — including the bicycling activities— and reporting to the Board of Trustees. Yeager argues that she provided bicycle literature to staff, but did not personally participate in, direct, instruct, or monitor camp bicycling activities, and did not advise or instruct bicycle leaders on matters relating to bicycle safety issues. Nonetheless, the summary judgment record does not indisputably establish that Yeager, as one responsible for implementing and evaluating programs such as the bike riding activities, was sufficiently removed from participation and supervision as to avoid liability. The defendants have not met their burden of demonstrating the absence of a triable issue in this respect, and therefore are not entitled to summary judgment.
II. The Third-Party Defendant’s Motion for Summary Judgment.
The defendants have brought a third-party claim seeking indemnification from the plaintiffs mother Debra Eastman (“Eastman”). They base their claim on an Authorization and Release clause (“the release”) which they allege Eastman signed as part of - the plaintiffs camp application. In pertinent part, the release reads as follows:
Parent’s Authorization and Release
. . . The undersigned, as parents or legal guardians of the above named minor child, hereby acknowledge that the activities, environs and camping at the Clara Barton Camp for Girls with Diabetes, Inc. are potentially dangerous and there is risk of physical injury and, in consideration of acceptance by Clara Barton Camp, Inc. to use its premises and participate in its programs, hereby release and forever discharges, covenants not to sue, indemnifies and agrees to hold harmless Clara Barton Camp, Inc. and the Unitarian Universalist Women’s Federation, its agents, officers and employees and all other persons liable or claimed to be liable, from any and all claims, demands, damages, suits or injuries whatsoever arising from or related to Clara Barton Camp, Inc. and the Unitarian Universalist *76 Women’s Federation attendance or participation in any of its programs.
(Emphasis added.)
Eastman seeks summary judgment in her favor, claiming: (1) the release does not run to the benefit of the third-party plaintiffs, and (2) the indemnification clause is unenforceable as a matter of public policy because the plaintiffs injuries resulted from the defendants’ violation of a statutory duty.
A. Whether the Release Operates to Benefit the Third-Party Plaintiffs.
In interpreting a contract, the court focuses on the language of the contract provisions. See Bjorkman v. Suffolk Construction Co., 42 Mass.App.Ct. 591, 592 (1997). Contract provisions are construed according to the plain meaning of their terms. See Sciaba Constr. Corp. v. Frank Bean, Inc., 43 Mass.App.Ct. 66, 69 (1997). Indemnification clauses are “fairly and reasonably construed in order to ascertain the intention of the parties and to effect the purpose sought to be accomplished.” Shea v. Bay State Gas Co.: Camp Dresser & McKee, Inc., 383 Mass. 218, 222 (1981). A contract should not be interpreted so as to render any of its terms meaningless. Id.
The defendants/third-party plaintiffs are agents and employees of the Clara Barton Camp, Inc., not of the Unitarian Universalist Women’s Federation. Construing the plain language of the contract, “its” (a singular possessive term) refers to agents and employees of the Unitarian Universalist Women’s Federation only, not to those of the Clara Barton Camp, Inc. Consequently, this release clause does not operate to release the defendants/third-party plaintiffs, as they are not employees or agents of the Unitarian Universalist Women’s Federation.
Nonetheless, the defendants/third-party plaintiffs may be entitled to indemnification under another clause in the contract, which releases “all other persons liable or claimed to be liable from any and all claims, demands, damages, suits or injuries whatsoever arising from or related to Clara Barton Camp, Inc. and the Unitarian Universalist Women’s Federation attendance or participation in any of its programs.” In the absence of fraud (which the third-party defendant does not allege occurred here), the court gives effect to broad releases even if the parties did not have in mind all the wrongs which existed at the time of the release. See Schuster v. Baskin, 354 Mass. 137, 140, 141 (1968). Any exceptions to a general release must be included in the release. Tupper v. Hancock, 319 Mass. 105, 108 (1946).
The language of the indemnification provision unequivocally and absolutely applies to all claims against all persons arising out of the plaintiffs use of the camp. Eastman cites no case law or statutory authority, nor is this court aware of any such authority, invalidating broad releases such as the instant one. favor of the defendants/third-party plaintiffs unless Eastman prevails in her final argument that the defendants/third-party plaintiffs violated a statutory duty, in which case enforcement of the provision would contravene public policy.
B. Whether the Indemnification Provision Is Invalidated by a Breach of the Defendants’ Statutory Duties.
Massachusetts courts are reluctant to enforce releases in those instances when doing so would shield tortfeasors from liability which arises from violation of a statutory duty. Zavaras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass.App.Ct. at 19.
Eastman argues that the defendants/third-party plaintiffs’ conduct could be found to constitute a violation of 105 Code Mass. Regs. 430.102, which states:
Each recreational camp for children which conducts specialized or high risk activities, either on or off-site, including, but not limited to, horseback riding, hiking, scuba diving, rock climbing, firearms, canoeing and aquatic events, shall conduct such activities only under the supervision of a counselor who has evidence of appropriate training, certification and experience in each activity under his or her supervision. Said counselor shall be present during periods of such activity. The operator shall make adequate provisions to assure any special training necessary for camp personnel to protect the safety and health of disabled campers.
In this case, the parties dispute whether: (1) bicycling constitutes a high-risk activity, and (2) Yutzy and Hermans had appropriate training, certification and experience to lead campers’ bicycle riding trips. The parties’ deposition testimony and affidavits establish that these Eire genuine issues of material fact precluding entry of summary judgment.
The defendants/third-party plaintiffs initially contend that bicycle riding is not expressly listed as a high risk activity, and therefore, the regulation does not apply to this case. However, the regulation’s list of activities is, by its terms, not exhaustive.
The following factors lend support to including bicycle riding as a high risk activity contemplated by 105 Code Mass. Regs. 430.102. The Commonwealth requires child bicycle riders to wear helmets, and penalizes parents or legal guardians who do not ensure compliance. As a result of this bicycle riding incident, the plaintiff suffered a very serious, life-threatening injury. The bicycling route chosen by Yutzy and Hermans on August 14, 1993 required the plaintiff, over her objections, to ride down a narrow, steep road, creating a high risk of injury from the activity. Finally, the normal risks of bicycle riding may well have been increased by the conduct of Hermans, who embarked on the trip without *77 waiting for the rest of the group, and by Yutzy, who directed the plaintiff to shift gears and pedal in order to catch up with the others. Because 105 Code Mass. Regs .430.102was intended to encompass allhigh risk activities of children at Massachusetts camps, it appears to cover the bicycle riding activity in this case.
The summary judgment materials present genuine issues of material fact as to the adequacy of the counselors’ training, certification and experience in bike riding. Yutzy’s training as a leader of camp activities entailed less than five minutes per activity. Yutzy does not recall instruction by the camp as to any specific rules for bike riding; rather, he was expected to read the safety rules issued by the camp. Lang testified that the only training given to counselors leading the bicycling activities was review of rules in the staff manual for approximately 15 or 20 minutes. The only bike safety training that Yutzy recalled receiving was in about 1978, when he was in the second grade. The other bike activity leader, Hermans, testified in her deposition that she did not recall ever having received specific instruction from the camp about how to lead a bicycle ride, nor did she recall whether the camp posted any rules for bicycle riding. While these summary judgment materials do not establish as a matter of law that Yutzy and Hermans lacked the training and experience required by 105 Code Mass. Regs. 430.102, they create genuine issues of material fact as to the applicability of that regulation.
ORDER
For all the foregoing reasons, it is hereby ORDERED that the defendants’ Motion for Summary Judgment be DENIED and that the third-party defendant’s Cross-Motion for Summary Judgment be DENIED.

 In 1997, the name of the camp was changed to ‘The Barton Center for Diabetes Education, Inc.”