THOMPSON *et al. v.* WATSON *et al.*

No. 12161. JUNE 14, 1938. REHEARING DENIED JUNE 25, 1938.

*H. F. Lawson,* for plaintiffs in error.
*Ryals, Anderson & Anderson,* contra.

HUTCHESON, Justice. Four children of J. D. Milam brought an action against Mrs. J. H. Thompson, the fifth child, and her husband, J. H. Thompson, for recovery of damages in the sum of the alleged full value of the life of J. D. Milam, by reason of the death of Milam allegedly caused by the negligent acts of the defendants. J. H. Thompson kept and maintained an automobile for the pleasure and convenience of his family including his wife, and the automobile was being so used at the time of the accident resulting in the death of Milam. The mother was killed in the same accident, and predeceased the father. The injury occurred while Mrs. Thompson was driving the automobile with smoothly worn tires, over a slippery highway around a curve on a rainy day, at a dangerous and reckless rate of speed. It is charged that the death of the father, J. D. Milam, which resulted from the injuries received by him in the casualty which occurred while riding as a guest of his daughter, was "directly and approximately due to the wilful and gross negligence of the defendants . . in the following particulars, to wit: (a) In the failure of said defendant, J. H. Thompson, to provide said automobile with tires which could

be safely operated over a highway with a smooth and slippery surface. (b) In allowing said automobile to be used and operated, on a rainy afternoon, with tires that had been worn smooth and were therefore unsafe for use on such an afternoon." The other specifications of negligence related to the manner of operation of the automobile by Mrs. J. H. Thompson just before and at the time of the casualty resulting in the death of the father.

To this petition the defendants filed a demurrer on the grounds that no cause of action was alleged, and no right to maintain the action was vested in the plaintiffs, but, if any right there was, it was vested in all of the children including the defendant Mrs. Thompson, and no action could be maintained unless she were joined as a party plaintiff. The court sustained the demurrer, and the plaintiffs excepted. The Court of Appeals reversed the judgment. *Watson* v. *Thompson,* 56 *Ga. App.* 490 (193 S. E. 75). On this decision of the Court of Appeals the defendants assigned error in a petition for certiorari, which writ was granted by this court. The assignments of error raise a number of questions relating to the rulings of the Court of Appeals; but in the view we take of the case it is only necessary to determine whether, under the facts alleged in the petition, a right or cause of action is stated against either Mrs. Thompson or her husband.

The rule of the common law was that actio personalis moritur cum persona, and no action could be maintained by the personal representative or heirs of a deceased person to recover damages for a tortious injury suffered at the hands of another. *Shields* v. *Yonge,* 15 *Ga.* 349 (60 Am. D. 698). In 1846 Lord Campbell's act passed both houses of Parliament, which provided: "Whenever the death of any person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony." In 1850 (Cobbs Dig. p. 476) an act was passed in this State, as follows: "In all cases hereafter where death shall ensue from or under circumstances which would entitle the deceased, if

death had not ensued, to an action against the perpetrator of the injury, the legal representative of such deceased shall be entitled to have and maintain an action at law against the person committing the act from which the death resulted—one half of the recovery to be paid to the wife and children, or the husband of the deceased, if any, in case of his or her estate being insolvent." In 1856 (Acts 1855-6, p. 155) another act was passed by the legislature, as follows: "If any one shall be killed by the carelessness, negligence, or improper conduct of any of said railroad companies, their officers, agents, or employees, by the running of the cars or engines of any of said companies, the right of action to recover damages shall vest in his widow, if any; if no widow, it shall vest in his children, if any; and if no child or children, it shall vest in his legal representatives." These two acts in the language enacted did not appear in the Code of 1863. Instead they appeared thus: "A widow, or, if no widow, a child or children, may recover for the homicide of the husband or parent; and if suit be brought by the widow or children, and the former or one of the latter dies pending the action, the same shall survive in the first case to the children, and in the latter case to the surviving child or children." § 2913. This section appears in the Code of 1868 as § 2920, and in the Code of 1873 as § 2971. In 1878 this section was amended (Acts 1878-9, p. 59) by adding thereto the following words: "The plaintiff, whether widow or child or children, may recover the full value of the life of the deceased, as shown by the evidence. In the event of a recovery by the widow, she shall hold the amount recovered subject to the law of descents, just as if it had been personal property descending to the widow and children from the deceased." And, "No recovery had under the provisions of this act, and the law of which it is amendatory, shall be subject to any debt or liability of any character of the deceased husband or parent."

This section as thus amended appears in the Code of 1882, as § 2971. It was amended by the act of 1887 (Acts 1887, p. 44), and as amended it appears as the following sections of the Code of 1895: § 3828. "A widow, or, if no widow, a child or children, may recover for the homicide of the husband or parent; and if suit be brought by the widow or children, and the former or one of the latter dies pending the action, the same shall

survive in the first case to the children, and in the latter to the surviving child or children. The husband may recover for the homicide of his wife; and if she leaves child or children surviving, said husband and children shall sue jointly, and not separately, with the right to recover the full value of the life of the deceased, as shown by the evidence, and with the right of survivorship as to said suit if either die pending the action. A mother, or, if no mother, a father, may recover for the homicide of a child minor or sui juris, upon whom she or he is dependent, or who contributes to his or her support, unless said child leave a wife, husband, or child. Said mother or father shall be entitled to recover the full value of the life of said child." § 3829. "The word 'homicide,' as used in the preceding section, shall be held to include all cases where the death of a human being results from a crime or from criminal or other negligence. The plaintiff, whether widow, or child, or children, may recover the full value of the life of the deceased, as shown by the evidence. In the event of a recovery by the widow, she shall hold the amount recovered subject to the law of descents, as if it had been personal property descending to the widow and children from the deceased, and no recovery had under the provisions of this section shall be subject to any debt or liability of any character of the deceased husband, or parent. The full value of the life of the deceased, as shown by the evidence, is the full value of the life of the deceased without deduction for necessary or other personal expenses of the deceased had he lived." These two sections were carried forward into the Code of 1910 as §§ 4424, 4425. The act of 1924 (Acts 1924, p. 60) amended these sections of the Code of 1910 by adding, after the words "child or children" in the first section, the words "minor or sui juris," and by providing that in cases where there is no person entitled to sue under the provisions of the sections as amended the administrator or executor of the decedent may sue for and recover and hold the amount recovered for the benefit of the next of kin, if dependent upon the decedent, or to whose support the decedent contributed; and that in such case the amount of the recovery shall be determined by the extent of the dependency or the pecuniary loss sustained by the next of kin. In 1889 an act was passed (Acts 1889, p. 73), which according to the construction placed thereon by this court *(Smith* v. *Jones,* 138 *Ga.* 716, 76 S. E. 40, and cit.) pro-

vided only that no pending suit for a tort should abate upon the death of either party, as distinguished from the cause of action. This act as amended by the act of 1935 (Acts 1935, p. 94) is now codified. Code of 1933, § 3-505. The various provisions of the homicide statute previously set out are now in that Code as § 105-1301, defining "homicide;" §§ 105-1302, 105-1303, 105-1304, 105-1305, relating to suit for homicide of husband or father; § 105-1306, relating to suit for homicide of wife or mother; § 105-1307, relating to suit for homicide of children; § 105-1308, defining the term "full value of the life of the decedent;" and § 105-1309, relating to suit by administrator or executor for benefit of heirs and next of kin.

What is the nature and character of the right or cause of action given by the homicide statute of this State as it now stands? We think it fitting that we first approach this question by stating what, in our opinion, would constitute a pure survival of a cause of action. A pure survival of the cause of action had by the decedent would, as any other right, reside in his executor, administrator, or heirs, with the right of the administrator, executor, or heirs to sue instead of the deceased had he lived, and to recover the identical damages that the decedent could have recovered in an action brought by him, the recovery to be held by the executor, administrator, or heirs as any other property of the estate, and subject to the debts and liabilities thereof. It is interesting to note that section 2913 of the Code of 1863 says nothing at all about the recovery being had in all cases where death ensued under circumstances which would have entitled the deceased, had not death ensued, to sue and recover for the injury to him, as was provided in the act of 1850, and in Lord Campbell's act. However, in *Western & Atlantic Railroad Co.* v. *Strong,* 52 *Ga.* 461, decided in 1873, it was said by this court: "By our law the right is given by statute to the wife generally for the 'homicide' of her husband. Surely this does not cover every case of homicide. Cases of self-defense, of inevitable accident, of execution by command of law, etc., must, *from the nature of things,* be excepted. And it seems to us that the true inquiry is: has the defendant violated any of the public or private obligations he was under to the deceased? Whether those obligations or duties were implied by law or existed by express contract is immaterial, but that some duty, public or private, was

violated by the homicide would seem to follow *from the very nature of a wrong, and from the principles of justice and equity*. And our original act giving this action puts the right precisely on this ground, to wit: whenever the husband, had he lived, would have had a right of action, then the wife has it, in case of his death." (Italics ours.) Since the original statute of 1850 this court has consistently held that no recovery could be had unless the deceased in his lifetime could have maintained an action for damages for the injury to him, and that any defenses good as against the deceased would be good as against the action brought by the beneficiaries. In this respect our statute may loosely be said to be a statute providing for the survival of a cause of action. In *Western & Atlantic Railroad Co.* v. *Bass,* 104 *Ga.* 390 (30 S. E. 874), the question was presented whether the widow's right of action was barred by the statute of limitations because her suit was not filed within two years from the date her husband was injured. Justice Fish, speaking for the court, said, "The plaintiff's action, however, was not for injuries done to the person of her husband. She had no right under the law to sue for such injuries; no one except the husband himself could maintain an action for them. If, however, such injuries resulted in his death, then, under section 3828 of the Civil Code [1895] a right of action accrued to her. That section provides that a widow may recover for the homicide of her husband, and plaintiff's suit is based upon the cause of action therein given her. This statute does not profess to revive the cause of action for the injury to the deceased in favor of his widow, nor is such its legal effect; but it creates a new cause of action, in favor of the widow, unknown to the common law. The right of action given by the statute is for the *homicide* of the husband, . . and is founded on a new grievance—namely, his homicide, and is for the injury thereby sustained by the widow and children, to whose exclusive benefit the damages must enure."

In *Atlantic, Valdosta & Western Railroad Co.* v. *McDilda,* 125 *Ga.* 468 (54 S. E. 140, 114 Am. St. R. 240), it was held that an action by a wife to recover damages for the negligent homicide of her husband is an action for an "injury done to the person," and must be brought within two years from the date of the death of the husband. The court said: "We think it clear that in an action by a wife for the homicide of her husband, the gist of the action

is an injury to the person. A wife has no property rights in the services of her husband, and no property rights in his life. Her statutory right to recover for his homicide is a substitution of the wife in his place for the purpose of recovering for the injury inflicted upon him, and the measure of damages is the value of the husband's life to the man himself, not the value of his life to the wife." This statement is apparently based on the following statement from *Southern Bell Telephone Co.* v. *Cassin,* 111 *Ga.* 575 (36 S. E. 881, 50 L. R. A. 694), quoted immediately thereafter, to wit: "However new it [the cause of action] may be, in the very nature of things it can not be independent; it is inherently rooted and grounded in the injury to the husband. It grows out of it, and is a part of it, having almost complete identity of substance, and subject to the same defenses." From that decision two Justices dissented. It was held by the majority that a release from all liability, executed by the husband to the tort-feasor, was a bar to an action by the widow under the homicide statute. The decision was placed upon the theory that since the release would have barred any action by the deceased had he lived, no action could be maintained under the death statute. The majority of the court, however, were careful to state that the "right to maintain concurrent suits is not involved in this case. What we are to determine is the effect of a release." In *Stephens* v. *Columbus Railroad Co.,* 134 *Ga.* 818 (68 S. E. 551), a married woman brought suit to recover damages for pain and suffering and permanent injuries alleged to have been sustained by reason of the negligence of the defendant. Upon the death of the plaintiff her administrator was made a party plaintiff. Upon the close of the evidence motion for nonsuit was made on the ground that the cause of action survived to the husband. It was said in the opinion, "Under such a state of facts two different causes of action may arise,—the one in favor of the woman for her own pain and suffering, and the other in favor of the husband for the loss of his wife's services and the expenses incurred, if any, as the consequence of the injuries to her. These causes of action are separate and distinct, and in favor of different parties, and could not properly be joined in one suit. *Georgia Railroad Co.* v. *Tice,* 124 *Ga.* 459 (52 S. E. 916). . . We do not think that any right of survivorship which would authorize the husband to proceed with this suit could be inferred from the

provision contained" in the homicide statute. "The right of survivorship [there] referred to arises in cases where, under the provisions of the statute . . the husband and a child or children are properly joined as plaintiffs in a suit brought to recover the 'full value' of the life of the deceased. . . In such a suit as that last supposed, there could be no recovery for that which constitutes the sole ground of recovery in the case at bar, to wit, pain and suffering inflicted upon the deceased."

In *Spradlin* v. *Georgia Railway & Electric Co.*, 139 *Ga.* 575 (77 S. E. 799), a suit was brought by a husband against a railway company, to recover damages for certain injuries alleged to have been received by him as the result of the negligence of the defendant. The plaintiff died, and his administrator was made a party plaintiff. Subsequently and pending this suit the widow sued under the homicide statute. The first suit resulted in a verdict for the defendant, and was pleaded in bar to the suit by the widow. It was said by a majority of the court through Justice Beck, that our statutes "distinctly provide for two separate proceedings: (1) a carrying forward by the administrator of a common-law action already begun by the deceased; (2) a right to recover for the homicide by the widow, or children. In the former a recovery can be had for pain and suffering, lost time, physician's bills, etc., accruing prior to the death of the injured person, but no recovery can be had for the 'full value of his life.' In the latter action a recovery can not be had for any of the damages recoverable in the former, but for 'the full value of the life of the deceased,' from the time of his death. The damages recoverable in one case are not recoverable in the other. . . True each action grew out of the same tort. . . It may be singular that two rights of action may grow out of the same transaction, and possibly one be lost and the other won, but that merely arises from the statute. . . A somewhat similar situation exists where a minor is permanently injured by the tort of another. His father may sue to recover for the loss of services of the minor until majority. The minor himself, by his next friend or guardian, may bring suit to recover for the permanent injury, not including the services for which his father may sue. See, in this connection, *Augusta Railway Co.* v. *Glover*, 92 *Ga.* 132 (4), 143 (18 S. E. 406); *Augusta Factory* v. *Davis*, 87 *Ga.* 648 (2), 649 (13 S. E. 577)." See *Nashville, C. & St. L. Ry.*

v. *Hubble*, 140 *Ga.* 368 (78 S. E. 919, L. R. A. 1915E, 1132) ; *Dayhuff* v. *Brown*, 150 *Ga.* 291 (103 S. E. 458). In *So. Ry. Co.* v. *Covenia*, 100 *Ga.* 46 (29 S. E. 219, 40 L. R. A. 253, 62 Am. St. R. 312), it was said: "Whatever may be the rule in other jurisdictions, it is well settled in this State that the gist of an action by a parent to recover damages for the death or injury of a minor child is the loss of services [under the common law]. *Shields* v. *Yonge*, 15 *Ga.* 349; *Allen* v. *Atlanta Street Railroad Co.*, 54 *Ga.* 503. The loss of service being the cause of action, it follows that when the infant is incapable of rendering service at the time of its death or injury the parent can not recover." See also *Chick* v. *Southwestern Railroad Co.*, 57 *Ga.* 357, 359, where it was said that the foundation of such an action is to recover damages for the loss of services, and not for the homicide.

It appears from what has been said in some of the decisions cited above, that the construction of a homicide statute can not always be placed upon a purely logical basis, and we do not here express any opinion as to the ultimate correctness of these decisions; but it is apparent that in the conclusions reached the court has laid down contradictory premises. The confusion arises, no doubt, because the statute gives a right of action to others for a tort committed upon another, upon the death of the party upon whom the tort is committed, and the idea of survival of a cause of action thus rears its head to torment and bewilder the investigator approaching the matter of construing the statute. We may observe, however, that the right or cause of action given by the statute differs in practically all particulars from a pure survival of the cause of action had by the deceased. It is true that it depends first upon the factum of an actionable tort having been committed upon the deceased, but the gist of the action is not the injury suffered by the deceased, but the injury suffered by the beneficiaries, resulting from the death of the deceased, which before the amendment of 1878 was the loss of support. The cause of action, while dependent upon the fact of an actionable tort against the deceased, accrues only by reason of the death. The damages recoverable are entirely different from those recoverable by the deceased upon the cause of action had by him, although in some instances proved by similar evidence. The beneficiaries are specifically named, and the recovery does not become a part of the estate of the deceased. In

these particulars it has none of the attributes of a mere survival of the cause of action had by the deceased, but has only those of a new and distinct right or cause of action, based merely upon the same tort which gave cause to the right of action in the deceased. While it may be within the power of the deceased before his death, by the execution of a release from all liability to the tort-feasor, to prevent the accrual of a right or cause of action in the beneficiaries, in that in so doing he "kills" the tort, thus leaving no actionable tort alive upon which the statute may operate, yet when the other component parts of the right or cause of action given by the statute are taken into consideration, it must be said that as between a pure survival of a cause of action and the grant of a new right and cause of action the latter seems to be the predominant ingredient of the mixture. The parent root may be the same as that out of which the deceased's right of action sprang, and the new offspring may for this reason have within it some of the features and characteristics of that root, but the new blood given by the statute composes the greater part of its being and life. With this construction of the statute before us we have this question to answer: Does the statute give to four of five children of a deceased father a right to maintain an action against the fifth child and her husband, for the homicide of the father caused by the joint negligence of the fifth child and her husband? It must be borne in mind that in answering this question it has been consistently held by this court that the statute is in derogation of the common law and must be strictly construed, and in its present form, as to the damages recoverable, has been said to be in the nature of a penalty against the wrong-doer. *Savannah Electric Co.* v. *Bell,* 124 *Ga.* 663 (53 S. E. 109) ; *Western & Atlantic R. Co.* v. *Michael,* 175 *Ga.* 1, 14 (165 S. E. 37). The statute is harsh in that it gives any right of action at all. Cf. *Smith* v. *Hatcher,* 102 *Ga.* 158, 160 (29 S. E. 162). Thus in construing the statute we must approach it, not with the idea that it is unjust or harsh if it fails to give a right of action in certain instances, but on the contrary that the harshness lies in the fact that it gives a right of action in any instance. This may seem contrary to a humanitarian point of view; but it has always been a rule of construction of statutes that those in derogation of the common law, that is those which give rights not had under the common law, and those penal in nature

must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute. The legislature is presumed to act with knowledge of this rule of construction, and with that body only lies the right and privilege to grant rights not given under the common law and to extend and broaden any rights so granted. Such is not the function of the courts. The statute in plain terms purports to give a right of action to all of the children of the deceased, minor or sui juris. This to our mind plainly evidences an intent to give a right of action for the homicide of the father only when death is caused by the tort of one other than a member of the class designated. Lord Campbell, the author of the first death statute of England from which our present statute evolved, said that his act was passed for the purpose of "giving a compensation by action to the families of those killed *by the negligence of others*." 12 Camp. Lives Ld. Ch. 265. Our first statute purported to give a right of action in any case where the deceased could have maintained an action had he lived. So did Lord Campbell's act. Our present statute contains no such provision. Regardless of the effect of the absence of this provision in our present statute, the children of the deceased are named as those to whom the right to recover is given, and it is given to them as a class, and not as separate individuals. There is nothing in the language of our statute as it presently stands that would tend to show an intention on the part of the legislature to make any exception to that status. The right of action being expressly given to all excludes an intention on the part of the legislature to give a right of action to a part of the children against the other, but on the contrary evidences an intention to give a right of action to the children for the death of the father only in cases where the death is caused by the tortious act of one other than the children.

In this connection it is contended by counsel for the plaintiffs that the decision of this court in *Mott* v. *Central Railroad,* 70 *Ga.* 680 (48 Am. R. 595), is controlling and adverse to the construction we have placed upon the statute. Before that decision it had been held that the words "child or children" as used in the statute included only minor children, in that "The measure of damage in such a case [suit by children for death of father] is the present worth of a reasonable support for them during minority." *M. &*

*W. R. Co.* v. *Johnson,* 38 *Ga.* 409, 433. In the *Mott* case the effect of the act of 1878, providing that the damages recoverable should be the full value of the life of the deceased, and that the recovery by the widow should go according to the law of descents, was before the court for decision. In holding that the act effected no change in the class of children to whom the right of action was given, the court said, "We can not entertain a serious doubt that the legislature meant to use the word 'children' in a limited and specific, and not in a generic or general sense. The precise words are 'the widow and children.' What widow? What children? The widow who had the right to bring the suit and recover; the children who, under certain contingencies, might likewise bring this suit, or to whom it would survive in certain other contingencies, and who could recover. None others are designated by this law. And who are they thus designated? It is evident, from the decisions upon previous legislation, that they were such only as were entitled to a support from the deceased; such as were dependent members of the family at the time of the homicide of the parent." It is insisted that the child sued in the instant case, being herself responsible for the death of the father, could not recover, and, under the ruling in the *Mott* case, is not included within the class who are given the right to sue under the statute; and that since the deceased could have maintained an action against her had he lived, the remaining children may, under the terms of the statute as thus construed, maintain an action against her. This might be true if the word "recover" as used in the *Mott* case should be interpreted in the sense as contended for. We are of the opinion, however, that if the word "recover" as used in that case be interpreted in the light of the question then before the court, a different and restricted meaning will attach thereto. Before that decision only those children who were dependent upon the deceased for support at the time of his death were entitled to recover under the statute; and the court held that while the measure of damages was changed by the act of 1878, the class of children was not enlarged thereby, and that even as amended only those children dependent upon the deceased for support were entitled to recover. It thus appears that when the court used the language "and who could recover," such words were used as referring to those children dependent upon the father for support rather than as referring to

those children who were, under ordinary rules of law, not precluded from maintaining an action on the tort. The right to recover under the statute rested both upon an actionable tort and dependency for support; and it was to the latter element and not the former that the court referred. The statute as presently constituted gives a right of action to children both minor and sui juris; and dependency being no longer an element in the right to recover (*Peeler* v. *Central of Georgia Railway Co.*, 163 *Ga.* 784, 137 S. E. 24), the language in the *Mott* decision, "and who could recover," no longer has any application to the statute, in so far as it pertains to an action brought by children for the death of the father.

Neither does the statute, by reason of the fact that no action could be maintained by the beneficiaries unless the deceased, had not death ensued, was entitled to maintain an action, give a right or cause of action by the beneficiaries in every case in which the deceased could have maintained an action had he lived. As we have already pointed out, our present statute contains no such provision as was contained in Lord Campbell's act and in our act of 1850, purporting to give the beneficiaries a right to maintain an action in any case in which the deceased, had not death ensued, would have been entitled to maintain an action had he lived. In *Western & Atlantic Railroad Co.* v. *Strong*, 52 *Ga.* 461, this court said that while the right given by the statute to the beneficiaries is generally for the "homicide," it "would seem to follow from the very nature of a wrong, and from the principles of justice and equity," that cases of self-defense, inevitable accident, or of execution by command of law, etc., were not included within the term, but only cases where some duty, private or public, was violated; thus by construction limiting the broad terms of the statute. To say that the beneficiaries, by reason of this construction placed upon the statute, may not maintain an action and that none is given in any case where the deceased could not have maintained an action on the tort, is not the equivalent of saying that the beneficiaries could maintain and are given the right to maintain an action in every case where the deceased could have maintained one had he lived. One does not follow from the other; one limits the right of action, the other enlarges it. It is true that the statute now contains the following definition: "The word 'homicide' as used in this chapter shall include all cases where the death of a

human being results from a crime or from criminal or other negligence" (Acts 1887, pp. 43, 45; Code, § 105-1301); but we do not think that this amendment of the statute as it then stood so changed it as to give a right of action in every case where the deceased, had not death ensued, could have maintained an action on the tort. Before that amendment the statute had been construed by this court as giving a right of action only in those cases wherein the defendants could be convicted of murder or manslaughter. *Daly* v. *Stoddard,* 66 *Ga.* 145; *McDonald* v. *Eagle & Phenix Manufacturing Co.,* 68 *Ga.* 839; *Allen* v. *Augusta Factory,* 82 *Ga.* 76 (8 S. E. 68). The only purpose of this amendment was to include, within the deaths for which a right of action was given under the statute, those deaths caused by ordinary negligence as well as criminal negligence, and did not enlarge or change the class of persons against whom a right of action was thus given. As we have shown, the gist of the cause of action given under the statute is the injury and damage to the children, not the injury and damage to the deceased; and it follows that the fact that the father might have recovered against the daughter upon his cause of action does not have sufficient relation or bearing upon the rights given by the statute to control or change what otherwise appears to be the meaning and intent of the legislature.

Counsel for the plaintiffs cite, as persuasive authority, Robinson *v.* Robinson, 188 Ky. 49 (220 S. W. 1074), and Nosser *v.* Nosser, 161 Miss. 636 (137 So. 491). In the Robinson case, an action by the administrator of a deceased wife and mother against the father and husband, the court held that the action could be maintained for the benefit of the children to the extent to which they were entitled to recover, the statute providing that in suits for the death of a wife and mother one half of the recovery should go to the husband and one half to the children; and that the fact that the husband would not be entitled to half of the recovery did not defeat the action of the administrator on behalf of the children entitled to the other half, against the husband whose wrongful act caused the death. In the Nosser case an action was brought by the husband and one of two sons against the other son, for the death of the mother, caused by the negligence of the defendant. It was held by the court that under the statute of Mississippi the fact that one statutory beneficiary is the person charged as de-

fendant in a death action does not prevent a recovery by the other beneficiaries. An examination of the statutes of Mississippi and Kentucky, upon which the decisions were based, discloses that they vary in many particulars from the statute of this State, and in each of the two cited cases the decision was placed squarely upon the theory that the statute gave a right of action in every instance in which the deceased could have maintained an action had the deceased lived. In view of these facts, and the language of the statute of this State, these decisions are not sufficiently authoritative on the question decided. The statute of this State not giving a right of action to the remaining children of a deceased father against one of the children for the wrongful death of the father, caused by the negligence of such defendant child, and the right, if any, being dependent entirely upon the statute, we must hold that the Court of Appeals erred in ruling to the contrary.

Does the statute, however, under the facts as alleged in the petition, give a right or cause of action against Mr. Thompson, the husband of Mrs. Thompson, alleged to be a joint tort-feasor? As to the negligence of Mrs. Thompson, there being no cause of action given by the statute as arising out of the tort committed by her, no action could be maintained thereon against her husband under the family-car doctrine. While under that doctrine her negligence is imputable to him, such negligence is not actionable under the statute. The petition, however, seeks a recovery against Mr. Thompson upon acts of negligence committed by him. Whether or not the statute gives a right or cause of action at all against the husband of a daughter of a deceased father, when the homicide is caused directly and proximately by the joint negligence of the daughter and her husband, it is not necessary to decide; this for the reason that if a cause of action is so given, it is given to all of the children of the deceased father, and not to a part of them. In *Williams* v. *Western & Atlantic Railroad Co.*, 142 *Ga.* 696 (83 S. E. 525), a mother brought an action against the railroad company to recover for the homicide of her son, under the Code, § 66-401, which declares that every common carrier shall be liable in damages in case of the death of any employee, to his or her personal representative, "for the benefit of the surviving widow or husband, or child or children of such employee; and if none, then of such employee's parents; and if none, then of the next of kin dependent

upon such employee, . . provided, that the party or parties for whose benefit recovery may be had under this and the five succeeding sections may sue and recover in their own name or names in the manner prescribed by sections 105-1302, 105-1303, 105-1306, and 105-1307, in case no administrator or executor has been appointed at the time suit is filed." A demurrer was interposed on the ground that the mother had no right to maintain an action in her own name alone if the father of the deceased child be alive. The court held that section 66-401 superseded sections 105-1302, etc., in so far as the right of the widow to sue alone for the death of a child was concerned, and that under that statute a joint right of action was given to the "parents," and if both be in life both must sue. This ruling was followed in *W. & A. R. Co.* v. *Smith,* 144 *Ga.* 737 (87 S. E. 1082). It would seem to follow from the rulings in these cases, that in the instant case, where the statute gives the right of action to the "children" of the deceased, all of the children must join in the action.

The ruling in *City of Elberton* v. *Thornton,* 138 *Ga.* 776 (76 S. E. 62, Ann. Cas. 1913E, 994), is no cause for a different ruling. In that case an action was brought by the children of a deceased father, to recover for his homicide, and it appeared that the mother had survived the father and had not brought an action prior to her death. The court held that by the terms of the statute a cause of action was given to both the mother and the children; and that while the right to sue was primarily in the widow, if there was one, her death without instituting suit did not abate the action. There was no ruling that the widow and children had a joint cause of action; and no question of joinder was involved—only a question whether the death of the widow abated the cause of action. The plaintiffs contend that since Mrs. Thompson herself was jointly responsible with her husband for the death of the father, it is not necessary to join her as a party plaintiff, citing as authority *Phillips* v. *Poole,* 96 *Ga.* 515 (23 S. E. 504), where this court held that where three persons jointly contract for the purchase of land, and the seller breaches the contract, neither one of the purchasers may maintain an action without joining therein the other purchasers, unless some good reason for the failure to do so, such as death or refusal to join, is alleged; and *Bernstein* v. *Fagelson,* 38 *Ga. App.* 294 (143 S. E. 237), where it was held

that the failure to make the plaintiff's co-obligee in the alleged contract a party to the action for the breach of the contract did not render the action demurrable, it appearing that the co-obligee's interest in the contract had been transferred to the defendant. None of these situations is presented in the instant case. Mrs. Thompson is not dead; she has not refused to join in the action, but on the contrary she seeks to have it dismissed because she is not a party plaintiff, and she has not transferred or settled whatever interest she may have, if any, under the statute in a cause of action against the defendant husband. To say that the daughter, Mrs. Thompson, having been herself responsible for the death of her father, is for that reason not entitled to recover therefor, and is therefore not a necessary party plaintiff, is begging the question. If no cause of action is given to her by the statute, none is given to the other children; for whatever cause of action is given by the statute is given to all or none. It follows that under the allegations of the petition no right or cause of action was alleged against the defendant J. H. Thompson in favor of the four plaintiffs, not all of the children of the deceased.

*Judgment reversed. All the Justices concur, except Russell, C. J., and Jenkins, J., who dissent.*