304 Ga. 68
FINAL COPY

S18Q0075. BIBBS et al. v. TOYOTA MOTOR CORPORATION et al.

BLACKWELL, Justice.

In this wrongful death lawsuit, the United States District Court for the Northern District of Georgia has certified two questions to this Court:

> Under Georgia law, are the damages that may be recovered in a wrongful death action brought by survivors of a decedent limited by a settlement entered into by the decedent's guardian in a previous personal injury suit settling all claims that were or could have been asserted in that suit?
>
> If the answer is yes, what components of wrongful death damages are barred?

We answer the first question in the affirmative, and in response to the second question, we explain that damages recovered or recoverable in an earlier personal injury lawsuit cannot be recovered again in a wrongful death suit. In many instances, this rule against double recoveries will not significantly limit the damages that may be recovered in a wrongful death lawsuit, but in the circumstances of this case, we acknowledge that the limitation is substantial.

1. In September 1992, Delia Bibbs was involved in a car accident in which she sustained a head injury that left her in a coma. A few months after the accident, she filed — through her husband, who then was acting as her legal guardian — a personal injury lawsuit against Toyota Motor Corporation and Toyota Motor Sales, USA, Inc. In that lawsuit, Bibbs alleged that her 1986 Toyota YR2 van had a defective seatbelt latch and door-locking mechanism, and she asserted that these defects caused her injuries. The case was tried by a jury, but before it returned a verdict, Bibbs and Toyota entered into a "high-low" settlement agreement, which guaranteed some recovery for Bibbs in the event of a verdict for Toyota, but limited Toyota's exposure in the event of a verdict for Bibbs. The jury returned a verdict for Bibbs, awarding substantial damages, including more than $400,000 for past medical expenses, $6 million for future life care expenses, and $30 million for past and future pain and suffering.

Within the next month, Toyota paid the amount required under the settlement agreement, and Bibbs (through her husband) executed a written release that incorporated the settlement agreement. In the settlement papers, Toyota "expressly den[ied] any liability" for the accident, and with one exception, Bibbs broadly released Toyota from all "claims" and "damages"

arising from the accident. Expressly excluded from the release was "any claim for Delia Bibbs' wrongful death, inasmuch as Delia Bibbs has not died and no such claim was made or could have been made in the [personal injury lawsuit]." Also in connection with the settlement, Bibbs dismissed her personal injury lawsuit with prejudice. Throughout the course of that suit and at the time of the settlement, Bibbs's husband was aware that her coma was permanent and that she was totally and permanently disabled.

More than 20 years later, Bibbs died, never having awakened from her coma. Together with her surviving children, Bibbs's husband filed a wrongful death lawsuit against Toyota, seeking damages for the full value of her life. The case was removed to federal district court, and Toyota filed a motion for partial summary judgment. In relevant part, Toyota argued that the release in the personal injury suit effectively precluded the plaintiffs in the wrongful death suit from recovering any damages beyond funeral expenses. In its initial ruling, the district court agreed for the most part with Toyota. Because Bibbs was totally and permanently disabled at the time of her personal injury lawsuit, the district court reasoned, the economic value of her life — the money that she might have earned but for the accident — was recoverable in the personal injury suit and

could not be recovered again in wrongful death. And although the plaintiffs in the wrongful death suit properly could seek to recover damages for the intangible, non-economic value of her life, that value would have to be measured from her perspective at the time of her death, when she already had been in a coma for more than 20 years.[1] The plaintiffs filed a motion for reconsideration, which the district court granted in part and denied in part. On reconsideration, the district court noted its uncertainty under Georgia law about the extent to which the settlement of the earlier personal injury lawsuit limited the damages recoverable in this wrongful death suit, and it certified to this Court the two questions that we recited earlier.[2]

2. In Georgia, wrongful death claims are authorized by OCGA § 51-4-2

---

[1] See Bibbs v. Toyota Motor Corp., 1:15-CV-02607, 2016 WL 9455376, at *5 (N.D. Ga. Dec. 19, 2016).

[2] The district court declined to certify a separate and distinct question about whether the jury verdict in the personal injury lawsuit precludes Toyota from disputing certain liability issues (such as product defect and causation) in this wrongful death lawsuit. The district court concluded that the verdict has no preclusive effect because Toyota expressly denied liability in the settlement and release that resolved the earlier lawsuit, and the district court found that the question about the preclusive effect of the verdict presented no "novel issue of Georgia law" that would warrant the certification of an additional question. In this Court, the plaintiffs urge us to take up the third question even in the absence of certification, but we decline to do so. Although we have jurisdiction to answer questions certified by a district court, see Ga. Const. of 1983, Art. VI, Sec. VI, Par. IV, the certification of questions does not give us jurisdiction over the case generally, which remains within the breast of the district court.

4

(a), which provides that a surviving spouse or child "may recover for the homicide of the spouse or parent the full value of the life of the decedent, as shown by the evidence." In one form or another, this provision has been a part of our law for nearly 170 years. See Engle v. Finch, 165 Ga. 131, 132 (139 SE 868) (1927). At common law, "no recovery could be had for an injury resulting in death, because the right of action died with the person. So a widow or child could not recover for the homicide of the husband or parent, and the husband could not recover for the homicide of his wife." Id. See also Shields v. Yonge, 15 Ga. 349, 350 (1854) (at common law, "the death of a human being could not be complained of as an injury"). To ameliorate the harshness and inequity of the common law, the English Parliament adopted Lord Campbell's Act in 1846, which authorized the legal representative of a decedent to recover damages for wrongful injury to the decedent that the decedent could have recovered himself "if death had not ensued." See Thompson v. Watson, 186 Ga. 396, 397 (197 SE 774) (1938), disapproved on other grounds in Walden v. Coleman, 217 Ga. 599 (124 SE2d 265) (1962).[3] Several American jurisdictions followed suit, adopting

---

[3] Lord Campbell's Act provided:
Whenever the death of any person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not

statutes modeled after Lord Campbell's Act. Georgia was among these. See id.

In 1850, the General Assembly adopted our first wrongful death statute, which provided:

> [I]n all cases hereafter where death shall ensue from or under circumstances which would entitle the deceased, if death had not ensued, to an action against the perpetrator of the injury, the legal representative of such deceased shall be entitled to have and maintain an action at Law against the person committing the act from which the death has resulted—one-half of the recovery to be paid to the wife and children, or the husband of the deceased, if any, in case of his or her estate being insolvent.

1851 Cobb's Digest at 476, § 83. See also Thompson, 186 Ga. at 397-398. Six years later, the General Assembly enacted another wrongful death statute, which applied to railroads:

> [I]f any one shall be killed by the carelessness, negligence or improper conduct of any of said rail-road companies, their officers, agents or employees, by the running of the cars or engines of any of said companies, . . . the right of action to recover damages, shall vest in his widow, if any; if no widow, it shall vest in his children, if any; and if no child or children, it shall vest in his legal

---

ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony.

Thompson, 186 Ga. at 397.

representatives.

1859 Cobb's Compilation at 526; Thompson, 186 Ga. at 398. See also South-Western R. Co. v. Paulk, 24 Ga. 356, 364-365 (1858) (discussing the relationship between the 1850 Act and the 1856 Act). When Georgia law was codified in 1861, these statutes were blended to form a new provision:

> A widow, or if no widow a child or children, may recover for the homicide of the husband or parent; and if suit be brought by the widow or children, and the former or one of the latter dies pending the action, the same shall survive in the first case to the children, and in the latter case to the surviving child or children.

Ga. Code of 1861, p. 543, § 2913; Thompson, 186 Ga. at 398.[4] This Code section was amended again in 1878 to add a provision fixing the measure of damages: "The plaintiff, whether widow or child or children, *may recover the full value of the life of the deceased, as shown by the evidence.*" Thompson, 186 Ga. at 398 (emphasis supplied) (quoting Acts 1878-1879, p. 59). That provision

---

[4] This new Code section was not the result of an independent and stand-alone enactment of the General Assembly. Rather, the Code section was formulated by the codification commission, and the General Assembly later approved the new Code in general. See Acts 1858, pp. 95-96 (granting authority to codify the laws); Acts 1860, p. 24 (approving the new Code). See also Robert E. Cleary, Jr., Eldridge's Georgia Wrongful Death Actions § 1:10 at 11-12 (4th ed. 2018).

has survived essentially unchanged to this day.[5]

In the decades that followed the original codification of the wrongful death statute, this Court struggled with the application of the proper measure of damages under the statute. As we observed,

> [t]he confusion arises, no doubt, because the statute gives a right of action to others for a tort committed upon another, upon the death of the party upon whom the tort is committed, and the idea of survival of a cause of action thus rears its head to torment and bewilder the investigator approaching the matter of construing the statute.

Thompson, 186 Ga. at 404.[6] We ultimately settled on an understanding that the

---

[5] Other parts of the wrongful death statute, including the enumeration of persons entitled to bring a wrongful death suit, have changed from time to time, but these changes are not relevant to our discussion.

[6] We should note that Georgia law contains a separate non-abatement statute, which provides: "No action for a tort shall abate by the death of either party, where the wrongdoer received any benefit from the tort complained of; nor shall any action or cause of action for the recovery of damages for homicide, injury to the person, or injury to property abate by the death of either party. . . ." OCGA § 9-2-41. It appears that this provision evolved independently of the wrongful death statute — its earliest iterations predate Lord Campbell's Act and can be found in Georgia law as early as the eighteenth century. See 1800 Watkins' Digest p. 395, § XVIII (non-abatement provision in the Judiciary Act of 1789); Neal v. Haygood, 1 Ga. 514, 517-518 (1846) (citing a non-abatement provision in the Judiciary Act of 1799 that "no suit, in any of said courts, shall abate by the death of either party, when such cause of action would, in any case, survive to the executor or administrator . . . ."). See also Southern Bell Tel. & Telegraph Co. v. Cassin, 111 Ga. 575, 581-582 (36 SE 881) (1900) (discussing, but not resolving, the interplay between the non-abatement statute and the wrongful death statute).
The non-abatement statute allows the victim's *estate* to bring (or continue) a personal injury action against the wrongdoer, while the wrongful death statute allows the victim's

statute confers a right of action on the survivors of a decedent, but only to recover damages for injuries suffered by the decedent — as measured from her perspective — not damages for the separate-but-related loss sustained by the survivors themselves. This understanding is not of recent vintage and, in fact, has appeared in our case law from the very beginning. See, e.g., South-Western R. Co. v. Paulk, 24 Ga. 356, 364-366 (1858) (the wrongful death statute of 1850 allows recovery for lost earnings of the decedent, but not for "the mental sufferings occasioned to survivors, by the death"); Central R. R. v. Rouse, 77 Ga. 393, 408 (3 SE 307) (1887) (measure of damages for wrongful death "is not affected by the wants of the family, but depends solely on the value of the [decedent's] life"); Brock v. Wedincamp, 253 Ga. App. 275, 280-281 (558 SE2d 836) (2002) ("It is clear . . . that under Georgia's wrongful death statute, damages are measured from the decedent's point of view. . . . [T]he measure of damages is not a [surviving] son's loss from his [deceased] mother's absence, but the mother's loss from not being able to raise her son." (citation and

_____

*spouse or children* to bring an independent action for wrongful death. See Mays v. Kroger Co., 306 Ga. App. 305, 306 (701 SE2d 909) (2010) ("[A] survivor's statutory claim for a decedent's wrongful death and an estate's common-law claim for the same decedent's pain and suffering are distinct causes of action."). This does not mean, however, that double damages are recoverable for the same injury, as discussed below.

punctuation omitted)).

In this light, although the *cause of action* for wrongful death belongs to the decedent's survivors and benefits them directly, the *measure of damages* in wrongful death actions is much the same as in personal injury actions. As we explained in one of our earlier cases, "the gist of the [wrongful death] action is an injury to the person," and the wrongful death statute "practically, though not technically, continue[s] and extend[s]" the right of action for personal injury. Atlantic, V. & W. R. Co. v. McDilda, 125 Ga. 468, 471-472 (54 SE 140) (1906). The statute, we explained,

> was intended to apply to the case of a party who, having a good cause of action for a personal injury, was prevented by his death, which resulted from such injury, from pursuing his legal remedy, or who omitted in his lifetime to do so. Such being the purpose of the change in the common law, . . . the [wrongful death] action . . . may be reasonably and naturally called an action for damages for personal injuries.

Id. at 472 (citations and punctuation omitted). See also Robert E. Cleary, Jr., Eldridge's Georgia Wrongful Death Actions § 6:1 at 464 (4th ed. 2018) ("[T]he measure of damages [for wrongful death] is the same as for a person who

survives a tortious injury but is totally and permanently disabled.").[7]

In Southern Bell Tel. & Telegraph Co. v. Cassin, 111 Ga. 575, 576 (36 SE 881) (1900), we considered the interplay between a personal injury action and a wrongful death action.[8] There, a husband was injured by a falling telephone cable and sued the telephone company. While the suit was pending, the husband accepted payment from the company "in full settlement of my action against [the defendant], . . . and also in full settlement of all and any claim for damages on

_____

[7] There are, of course, practical differences in the measure of damages for one who is deceased and one who is totally and permanently disabled. One who is *living* with a total and permanent disability would be entitled in a personal injury suit, for example, to recover long-term care expenses, while one who dies instantly from her injuries would not incur, and would not be entitled to recover, the same losses in wrongful death. Likewise, a long-term injury might allow recovery for certain elements of pain and suffering, while instantaneous death would not. Compare Grant v. Ga. Pacific Corp., 239 Ga. App. 748, 751 (1) (521 SE2d 868) (1999) ("Where . . . death was instantaneous, and there is no evidence the decedent exhibited consciousness of pain, recovery for the decedent's pain and suffering is not permitted."), with Monk v. Dial, 212 Ga. App. 362, 362 (1) (441 SE2d 857) (1994) (in wrongful death actions, damages are authorized for the "fright, shock, and mental suffering" experienced by the decedent in the last moments before his death).

[8] At that time, the wrongful death statute was codified in Ga. Code of 1895, § 3828, and provided in relevant part:

> A widow, or, if no widow, a child or children, may recover for the homicide of the husband or parent; and if suit be brought by the widow or children, and the former or one of the latter dies pending the action, the same shall survive in the first case to the children, and in the latter to the surviving child or children. The husband may recover for the homicide of his wife; and if she leaves child or children surviving, said husband and children shall sue jointly, and not separately, with the right to recover the full value of the life of the deceased, as shown by the evidence, and with the right of survivorship as to said suit if either die pending the action.

11

my part, arising out of the injury received by me." Id. at 576 (punctuation omitted). Several years later, the husband died, and his widow instituted a wrongful death action against the company. We held that the widow's claim for damages was *barred* by the husband's earlier settlement.

Citing the purpose of the wrongful death statute — to allow recovery for a person's injuries despite the death of the injured — we explained that, while the statute may provide a new and separate cause of action, it is "inherently rooted and grounded" in the personal injury claim; "[i]t grows out of it, and is a part of it, having almost complete identity of substance, and subject to the same defenses." Cassin, 111 Ga. at 580. Thus, the wife obtained only such claims as the husband could bring had he lived, and she was subject to all of the defenses that the company had against the husband. Because the husband had already settled his personal injury claim in full, he could not again recover the damages for such claim, and neither could his wife. See id. at 589-593.

Although Cassin was decided more than a century ago, we recently have reaffirmed the principle that wrongful death claims are "wholly derivative" of personal injury claims, and thus "all defenses which could have been made against a decedent also bind the beneficiaries when they pursue a wrongful death

claim." United Health Svcs. of Ga. v. Norton, 300 Ga. 736, 738 (2) (797 SE2d 825) (2017) (an arbitration agreement signed by the decedent prior to her death was enforceable in a wrongful death action brought by her beneficiaries).

3. Given the foregoing principles, we can now begin to answer the district court's questions in light of the facts of this case. Because the plaintiffs' wrongful death claim is wholly derivative of Bibbs's personal injury claim, they can only recover those damages that Bibbs herself could have recovered if she had asserted the claim herself. See Norton, 300 Ga. at 738; Cassin, 111 Ga. at 576. Moreover, it is undisputed that Bibbs (through her husband and guardian) fully settled her personal injury claim (though not her wrongful death claim) and released Toyota from all damages that she incurred as a result of the car accident. This raises the question: could Bibbs again recover the "full value" of her life as measured from the date of her injury? We think not.

"Georgia, as part of its common law and public policy, has always prohibited a plaintiff from a double recovery of damages; the plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole." Ga. Northeastern R. Co. v. Lusk, 277 Ga. 245, 246 (587 SE2d 643) (2003). See also Central Ga. Power v.

Pope, 141 Ga. 186, 187 (80 SE 642) (1913) ("In applying different possible measures of damages, they should not be so used as to duplicate damages for the same injury."); Crews v. Doe, 192 Ga. App. 201, 202 (384 SE2d 267) (1989) (plaintiffs in tort action are "not entitled to recover twice for the same damages") (citation and punctuation omitted); Malone v. City of Rossville, 107 Ga. App. 271, 272 (1) (129 SE2d 563) (1963) ("[T]here can be only one recovery of damages for one wrong or injury.").

As we mentioned earlier, the sorts of damages recoverable in wrongful death actions are substantially the same as the kinds of damages that may be recovered in personal injury actions. See McDilda, 125 Ga. at 472. These damages cover the losses *suffered by the injured person* and include economic components, such as lost earnings, and non-economic components, such as loss of enjoyment of life. See South Fulton Med. Center, Inc. v. Poe, 224 Ga. App. 107, 112 (6) (480 SE2d 40) (1996) (the "full value" of the child decedent's life "includes both the economic value of the deceased's normal life expectancy and the intangible element incapable of exact proof," such as the child's loss of "a parent's society, advice, example and counsel" (citation and punctuation omitted)); Simmons Co. v. Hardin, 75 Ga. App. 420, 433 (10) (43 SE2d 553)

14

(1947) (in a personal injury action, the "loss or material impairment of any power or faculty is a matter of compensation, regardless of any pecuniary return the exercise of same may produce and irrespective of any conscious pain or suffering" (punctuation omitted)).

Having fully settled her personal injury lawsuit, Bibbs is presumed to have recovered the damages she was entitled to receive at that time as a result of her catastrophic physical injury. She was fully compensated under the law for the fact that she was, and would remain for the rest of her life, totally and permanently disabled — just not for the additional fact of her death. Having thus recovered, she was made whole (in the legal sense) and could no longer recover for the economic and non-economic damages stemming from her disability. To hold otherwise would be to allow impermissible double recovery. See Lusk, 277 Ga. at 245; Cassin, 111 Ga. at 595 (allowing wife to proceed with wrongful death action after her deceased husband had settled personal injury suit would impermissibly force defendant "to pay a second time in case of death. It means double damages"). See also Riggs v. Georgia-Pacific LLC, 345 P3d 1219, 1226 (Utah 2015) ("[I]n a wrongful death action following the decedent's successful personal injury action, it would be inappropriate to extract the same damages

15

from the defendants twice."). Even if Bibbs had settled for less than the amount to which she was entitled at the time, her release of Toyota from *all* personal injury claims and damages stemming from the accident gave Toyota a complete defense to any future action *by Bibbs* seeking additional recovery for her injuries. See Western & A. R. Co. v. Atkins, 141 Ga. 743, 746 (82 SE 139) (1914) (a valid release "operates as an accord and satisfaction and furnishes a complete answer to the plaintiff's action").

It is true that Bibbs did not release a wrongful death *claim*, but, as Toyota points out, this does not mean that the damages recoverable under that claim are not limited by her prior recovery or release. See Cassin, 111 Ga. at 595. See also Crews v. Doe, 192 Ga. App. at 202 ("[S]ince the compensation given [to plaintiffs] by the named tortfeasor was clearly intended to compensate them in part for the same damages which they are seeking to recover in this action, [defendant] could plead the payment of same in reduction or avoidance of [plaintiffs'] right of recovery but not as an absolute bar to their right of action." (citation and punctuation omitted)). Whether a person can bring a claim is an entirely different question from how much she is entitled to recover under that claim. See Ga. Interlocal Risk Mgmt. Agency v. City of Sandy Springs, 337 Ga.

16

App. 340, 344 (1) (788 SE2d 74) (2016) (Peterson, J.) ("Under its ordinary usage, a claim is defined as 'a demand for something rightfully or allegedly due' or 'a right to something'" (citation and punctuation omitted)). And here, as discussed above, Bibbs's ability to recover on *any* claim stemming from her accident is limited by her personal injury settlement and release. While Bibbs's wrongful death beneficiaries are different plaintiffs (they have not signed the release or participated in the personal injury action[9]), they are still subject to the same defenses as Bibbs, given the derivative nature of the wrongful death action. See Norton, 300 Ga. at 738; Cassin, 111 Ga. at 576. In short, Bibbs cannot (again) recover damages against Toyota for her personal injuries to the extent that those damages were recovered or recoverable in her earlier personal injury lawsuit, and if she cannot recover, neither can her survivors.

Citing our decision in Spradlin v. Ga. R. & Elec. Co., 139 Ga. 575 (77 SE 799) (1913), the plaintiffs argue that wrongful death damages are legally distinct from damages recoverable in personal injury actions, and thus no danger of double recovery occurs. In Spradlin, we confronted a situation where a

---

[9] As mentioned above, Bibbs's husband signed the release in his capacity as her legal guardian, and in this wrongful death action, he is proceeding in his distinct capacity as her surviving spouse.

passenger sued a railway company for injuries, but died while the suit was pending. The passenger's estate continued the suit, but at the same time, his widow filed another action against the railway company for wrongful death. The company prevailed in the personal injury lawsuit and sought to bar the pending wrongful death action. We held that the wrongful death action could proceed, explaining that, in a personal injury suit,

> a recovery can be had for pain and suffering, lost time, physician's bills, etc., *accruing prior to* the death of the injured person, but no recovery can be had for the "full value of his life." In the [wrongful death] action, a recovery can not be had for any of the damages recoverable in the former but for "the full value of the life of the deceased," from the time of his death. The damages recoverable in one case are not recoverable in the other; so that they do not overlap *in that respect*.

Spradlin, 139 Ga. at 576 (emphasis supplied). See also Dayhuff v. Brown & Allen, 150 Ga. 291, 292 (103 SE 458) (1920) (upholding Spradlin in a case involving similar facts).

In the context of this case, Spradlin stands for the simple proposition that, until the injured person dies, she has not yet lost — and thus cannot recover — the "full value" of her life. Spradlin cannot be read to mean that no *part* of the damages recoverable in a personal injury action can ever overlap with wrongful

18

death damages. That would make little sense. Both personal injury and wrongful death actions, for example, allow recovery of economic damages based on lost earnings. See, e.g., Wright v. Lail, 219 Ga. 607, 609 (135 SE2d 418) (1964) (one of the elements of damages in a personal injury action is the "diminution of one's capacity to earn money," which takes into consideration the plaintiff's "earnings before the injury, earnings after the injury, [and] probability of increased or decreased earnings in the future"); Consolidated Freightways Corp. v. Futrell, 201 Ga. App. 233, 233 (1) (410 SE2d 751) (1991) (damages in wrongful death actions include "those items having a proven monetary value, such as lost potential lifetime earnings, income, or services"). A person who suffers a completely debilitating and permanent injury may recover the value of all earnings she would have made based on her normal life expectancy (as further explained below), and this amount necessarily would overlap with economic damages recoverable in the event of her untimely and wrongful death.

Like any precedential decision, Spradlin must be read in light of the facts presented in that case. And unlike this case, Spradlin involved a personal injury case that was litigated to judgment only after the death of the original plaintiff, while a separate wrongful death suit was pending. Because the original plaintiff

19

died before the conclusion of the personal injury case, his damages recoverable in the personal injury case were cut off at the point of his death, and there was no occasion in the personal injury case for the recovery of damages for *future* losses extending beyond the date of actual death. Every loss recoverable in personal injury had been sustained by the time of the judgment, and in the personal injury case, the only damages properly recoverable would have been for the *past* economic and non-economic losses sustained by the original plaintiff up to the date of his death. The wrongful death action, on the other hand, would cover damages from the point of actual death until the normally expected time of death, as shown by mortality tables or other evidence. See Spradlin, 139 Ga. at 576 (recovery for wrongful death is the "full value" of the decedent's life "from the time of his death").

In cases, on the other hand, in which a personal injury claim is litigated to judgment before the death of the plaintiff, damages for both *past* and *future* losses may be recoverable in the personal injury action. Moreover, the *future* losses recoverable in such a case involving a permanent disability extend out to the full life expectancy of the plaintiff, as that life expectancy would have been understood before the injury — to "the end of [the plaintiff's] life, had he not

been injured." <u>Florida Central & Peninsular R. Co. v. Burney</u>, 98 Ga. 1, 12 (26 SE 730) (1895) (formulating suggested jury instructions on economic damages in personal injury case). See also <u>Southern R. Co. v. Scott</u>, 128 Ga. 244, 249 (2) (57 SE 504) (1907) (endorsing <u>Burney</u> instruction on damages); Eric James Hertz & Mark D. Link, Georgia Law of Damages § 3:2 (2017-2018 ed.). And where the disability is not only permanent, but also total, the full measure of economic damages may be recoverable at the time of judgment in the personal injury case, as well as a substantial portion of the full non-economic value of life.

Consequently, in cases like this one, there may be substantial overlap between the damages for *future* losses recoverable in personal injury and the damages recoverable in wrongful death. Indeed, in this case, Bibbs's personal injury action was litigated and fully resolved long before her death. At the time of the settlement, the parties and the jury did not know (and could not have known) how long Bibbs would actually live, and so, for purposes of calculating damages, they could reasonably assume that Bibbs would live out her expected life span; Bibbs was entitled to recover damages for the entire expected duration of her permanent and total disability — that duration being her ordinary life

21

expectancy based on mortality tables or other evidence. See OCGA § 24-14-45 (a) (allowing use of mortality tables to calculate damages for wrongful death or permanent personal injury); Cox v. Cantrell, 181 Ga. App. 722, 723 (2) (353 SE2d 582) (1987) (mortality tables may be "used by the jury to determine damages in cases involving permanent injuries"). Bibbs was injured at age 36. Assuming her life expectancy was 80 years of age (as the parties suggest), she could have recovered 44 years' worth of lost earnings, for example.[10] And we presume that Bibbs did recover this amount, given her full settlement and release. If, however, she had filed suit for the first time today, her personal injury action would have warranted recovery for only 22 years' worth of lost earnings — the time period from her injury until her death. The rest would be covered by the wrongful death action. In sum, wrongful death damages and personal injury damages are often distinguishable, but sometimes overlap, and where they do, double recovery is impermissible.

The plaintiffs argue that, even if personal injury and wrongful death

_____

[10] One of the mortality tables expressly authorized by OCGA § 24-14-45 (a) — The Commissioners 1958 Standard Ordinary Mortality Table — projects a 36-year-old person to have a further life expectancy of 35.78 years. See OCGA, Title 24, Appendix at 1237. These tables are not exclusive, however, and other tables and evidence may be used for calculating damages. See OCGA § 24-14-45 (b), (c).

22

damages overlap, the wrongful death statute still authorizes double recovery because the statute is punitive and is intended to "make[ ] homicide expensive." Western & A. R. Co. v. Michael, 175 Ga. 1, 13 (165 SE 37) (1932). Indeed, a number of our cases hold that the wrongful death statute is not only compensatory but punitive in nature. See id.; Engle v. Finch, 165 Ga. 131, 134 (139 SE 868) (1927); Savannah Elec. Co. v. Bell, 124 Ga. 663, 668 (53 SE 109) (1906). But the statute is punitive not because it permits double damages, but because it allows recovery for "the full value of the life of the deceased, irrespective of its real value to the person in whom the cause of action is vested." Michael, 175 Ga. at 14; Engle, 165 Ga. at 134 (same). In other words, a husband may recover his deceased wife's lost earnings even if, for whatever reason, he had suffered no financial loss from her death. The statute is also punitive in that it allows recovery even if the *actual value* of the decedent's life is somewhat less than the *full value*. See OCGA § 51-4-1 (1) ("'Full value of the life of the decedent, as shown by the evidence' means the full value of the life of the decedent without deducting for any of the necessary or personal expenses of the decedent had he lived."); Bell, 124 Ga. at 668 (punitive nature of wrongful death statute could allow recovery of more than the "actual value" of

the decedent's life). We have never interpreted the wrongful death statute to allow recovery of the very same damages that had already been recovered or released.

To sum up, we answer the district court's first question in the affirmative: damages in a wrongful death action *are* limited by the decedent's full settlement of her earlier personal injury action.

4. We now turn to the second question certified — what components of wrongful death damages are barred? The answer to this question flows directly from our previous discussion. What is barred are those components that were recovered or recoverable in the fully-settled personal injury action. In many circumstances, this bar would leave substantial damages to be recovered in wrongful death. After all, most injuries are not completely disabling, and for so long as the victims live with the injury, they may retain at least some capacity for earning money and enjoying life; in those instances, it is easy to see how an untimely death creates additional and substantial loss. But where the injury leaves the victim in a permanent coma, as in this case, it becomes more difficult to identify additional damages flowing merely from the additional fact of death.

Toyota argues that the plaintiffs cannot recover anything in this wrongful

death action (save for burial expenses) because Bibbs was deprived essentially of her entire life at the moment of injury, and she could have recovered damages for that deprivation in the personal injury action. But we are not prepared to go so far. With respect to economic damages, Toyota is almost certainly correct. We see no reason to conclude that anything less than the full measure of Bibbs's economic damages was recoverable at the time of her personal injury case, and so, there are no economic damages left to recover in wrongful death. With respect to non-economic damages, on the other hand, we cannot say as a matter of law that there is no difference in value between living in a permanent coma and not living at all, even from the decedent's perspective. Put simply, we cannot say that Bibbs's life in a coma had zero monetary value. After all, not everyone would choose to be disconnected from life support in the event of a catastrophic injury. A jury may find, for example, that a patient in a permanent coma might still retain some vestiges of consciousness or inner life. Or it may be that simply being alive, though comatose, allows a person to provide some comfort and hope to her loved ones in a way that is lost with death. Whatever the residual value, if any, of Bibbs's life to her while she was in a coma, this question is properly litigated in the district court.

Certified questions answered. All the Justices concur.

Decided June 18, 2018.

Certified question from the United States District Court for the Northern District of Georgia.

Barnes Law Group, Roy E. Barnes, John R. Bevis, John R. Bartholomew IV; Cheeley Law, Robert D. Cheeley, Keith A. Pittman; Fryer, Shuster & Lester, Keith E. Fryer; Thomas A. Eaton, for appellants.

Rutherford & Christie, Carrie L. Christie, Robert H. Burke; Bondurant, Mixson & Elmore, Frank M. Lowrey IV, Amanda K. S. Bersinger; Bowman and Brooke, Joel H. Smith, Richard H. Willis, Ashleigh R. Wilson, for appellees.